**Marion BARRY, Plaintiff,**

v.

**Patrick WHALEN, Individually, Jackie Taylor, Individually, Eugene Ray, Individually, Lisa Wegner, Individually, Joe Krovisky, Individually, and Gregory Bogdan, Individually, Defendants.**

**Civ. A. No. 3:92–CV–33.**

United States District Court,
E.D. Virginia,
Richmond Division.

June 22, 1992.

505, 507 (W.D.N.C.1987).

Beverly Diane Crawford, Sa'Ad El–Amin, El–Amin & Crawford, P.C., Richmond, Va., for plaintiff.

Robert William Jaspen, U.S. Atty.'s Office, Richmond, Va., for Patrick Whalen.

Carolyn Sabol, Regional Counsel, Mid–Atlantic Region, Federal Bureau of Prisons, Dept. of Justice, Annapolis Junction, Md., for Jackie Taylor.

## MEMORANDUM

MERHIGE, District Judge.

Barry filed this action against the above named six defendants in their individual capacities seeking a temporary restraining order; a preliminary and permanent injunction; declaratory judgement; and compensatory and punitive damages for violations of his civil and constitutional rights under 42 U.S.C. § 1983; the Fifth and Sixth Amendments to the United States Constitution; and for violation of his right to privacy. This matter is now before the Court on the six defendants' individual motions to dismiss, or alternatively motions for summary judgment, and simultaneous motions to substitute the United States as the proper defendant with respect to all non-constitutional claims. These motions have been fully briefed and argued and are ripe for disposition by this Court. As the parties on May 18, 1992 stipulated to the dismissal with prejudice of Defendant Whalen, the following memorandum addresses only the remaining five defendants.

*Factual Background*

This litigation arises from allegations that Marion Barry engaged in sexual activity with a female visitor while he was an inmate at the Federal Prison Camp located in Petersburg, Virginia. On or about January 6, 1992, Barry received an Incident Report which contained allegations by two white inmates, Floyd Archer Robertson and Robert W. Bromley, and their wives. The Report alleged that Barry had engaged in sexual acts with a female visitor in the visiting room of the prison on December 29, 1992. The allegations stated, among other things, that Barry had oral sex with his visitor; that Barry had his hand under his visitor's dress; and that the visitor had her hand on Barry's genitals.

Inmate Robertson was transferred subsequently to FCI Butner, North Carolina. While at Butner, Robertson gave an exten-

sive telephone interview with the Washington Post during which Robertson discussed in detail the allegations of the Incident Report filed against Barry. It is alleged that Defendant Wegner arranged and monitored this interview which was the basis for an article which appeared in the Washington Post.

Upon inquiry relating to Robertson's transfer, Defendant Krovisky allegedly confirmed to the Washington Post that Robertson was transferred to North Carolina for his own safety relative to threats allegedly made against Robertson by Barry following the filing of the Incident Report. Defendants Ray and Bogdan also allegedly released information to the press relating to the allegations of sexual conduct by Barry.

An informal hearing was held regarding the alleged incident on January 7, 1992 by the camp administrator at the FCI in Petersburg, Virginia. The camp administrator found Barry guilty of violating prison Rule 205, which prohibits engaging in sexual acts, and recommended sanctions. Barry was advised on the day of this hearing that his hearing date before a District Hearing Officer (DHO) would be January 16, 1992. On January 9, 1992 at 10:30 a.m., Barry was notified that his hearing before the DHO would in fact be the next day at 8:00 a.m.

Barry's hearing was held on January 10, 1992 at 9:00 a.m. and presided over by DHO Jackie Taylor. Taylor determined that Barry was guilty of violating Rule 205, which prohibits prisoners from engaging in sexual acts. In view of the violation, Taylor imposed the following sanctions: fifteen days of isolation, to be suspended for ninety days; immediate transfer to a Level II prison facility; and that the female visitor referenced in the Incident Report could not visit Barry for 120 days.

Barry filed an administrative appeal. Subsequently, Barry filed a three-count complaint alleging a variety of state and federal claims against the above named six defendants. Each defendant has filed a motion to dismiss, or in the alternative for summary judgment, on the following grounds:

*Grounds for Dismissal as to Defendants Wegner and Krovisky:*

1. Insufficiency of service of process under F.R.C.P. 4(e);
2. No constitutionally valid basis for the exercise of personal jurisdiction exists;
3. The Federal Tort Claims Act mandates substitution of the United States for Defendants Wegner and Krovisky as to all claims not premised on violations of the constitution or a federal statute specifically authorizing suits against federal employees in their individual capacities;
4. As to any constitutional claims:
   (a) the complaint fails to state a constitutional cause of action against Wegner or Krovisky;
   (b) Barry must exhaust his administrative remedies before his *Bivens* claim may be entertained by this Court; and
   (c) if the complaint can be construed to articulate a viable constitutional cause of action, the action must be dismissed because of the defendants' qualified immunity from suit.

*Grounds for Dismissal as to Defendant Bogdan and Ray:*

1. The Federal Tort Claims Act mandates substitution of the United States for Defendant Bogdan as to all claims not premised on violations of the constitution or a federal statute specifically authorizing suits against federal employees in their individual capacities.
2. As to any constitutional claims against Defendant Bogdan:
   (a) the complaint fails to state a constitutional cause of action against Bogdan;
   (b) Barry must exhaust his administrative remedies before his *Bivens* claim may be entertained by this Court; and
   (c) if the complaint can be construed to articulate a viable constitutional cause of action, the action must be dismissed because of Bogdan's qualified immunity from suit.

*Grounds for Dismissal as to Defendant Taylor:*

1. As to Counts I and II [1], Taylor as a Disciplinary Hearing Officer is cloaked with absolute immunity from liability on account of actions he takes in that capacity. In the alternative, Counts I and II should be dismissed based on Defendant Taylor's qualified immunity from suit.

2. Counts I and II fail to state constitutional claims upon which relief can be granted or are subject to summary judgment in favor of Defendant Taylor.

3. Counts I and II may not proceed against Defendant Taylor in his personal capacity for declaratory and injunctive relief.

## I. JURISDICTIONAL ISSUES

### A. Insufficiency of Service of Process

■ Both Defendants Wegner and Krovisky were personally served with the summons and complaint at their respective places of employment. Defendant Wegner is employed by the Bureau of Prisons at the Federal Correctional Institution in Butner, North Carolina, and resides in North Carolina. Defendant Krovisky is employed by the United States Department of Justice in Washington, D.C., and resides in Maryland. Defendants Wegner and Krovisky assert, correctly in the Court's view, that the manner of service of process utilized by the plaintiff in this case failed to conform to any of the acceptable modes of service described in Rule 4 of the Federal Rules of Civil Procedure. Pursuant to Rule 4(e), defendants such as Wegner and Krovisky who are not residents of, or found within, the state in which the district court is held must be served with process in the manner prescribed by the applicable laws of the state in which the district court is held. As this Court sits within the Eastern District of Virginia, Virginia law is of course applicable.

Under Virginia Code § 8.01–329(A), hand delivery of process to out-of-state defendants is effective service of process *providing* that "the exercise of personal jurisdic-

tion is authorized" by Virginia's Long Arm Statute.

Under the pertinent part of Virginia's Long Arm Statute:

(A) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth.

Virginia Code § 8.01–328.1(A)(4).

Virginia courts have interpreted this statute broadly to assert jurisdiction over non-residents to the extent permissible under the due process clause of the federal constitution. *Brown v. ABC,* 704 F.2d 1296 (4th Cir.1983). When jurisdiction is sought pursuant to Virginia's Long Arm Statute, the appropriate analysis is two-fold: first, the Court must determine that the statutory language purports to assert personal jurisdiction over the defendant; second, if the answer to the first question is in the affirmative, the Court must determine whether the statutory exercise of jurisdiction is constitutionally permissible. *See Peanut Corp. v. Hollywood Brands, Inc.,* 696 F.2d 311 (4th Cir.1982); *Processing Research, Inc. v. Larson,* 686 F.Supp. 119 (E.D.Va.1988).

Under § 8.01–328.1(A)(4), *supra,* this Court must initially determine if either Defendant Wegner or Krovisky has caused a tortious injury within the Commonwealth of Virginia. Courts examining Virginia's Long Arm Statute have found that the question of whether a defendant has caused a "tortious injury" in the Commonwealth turns on whether injury has occurred in Virginia. *Pennington v. McDonnell Douglas Corp.,* 576 F.Supp. 868 (E.D.Va.1983). Undoubtedly if Mr. Barry has suffered cognizable injury as a result of Wegner or Ray's actions, then he suffered that injury in Virginia. However,

---

**1.** The plaintiff concedes that Count III is inap-   plicable to Taylor.

because all actions of the defendants were performed outside of Virginia, their single respective acts in communicating with the media regarding Barry are insufficient to confer jurisdiction unless one of the three relationships described above in section 8.01–328.1(A)(4) exists between the defendant and the Commonwealth. *See Blue Ridge Bank v. Veribanc, Inc.*, 755 F.2d 371 (4th Cir.1985).

There is simply no evidence before the Court to indicate that Defendants Wegner and Krovisky have had the requisite contacts with Virginia to meet the statutory requirements. Defendants Wegner and Krovisky have persuasively maintained that each of their relationships to the Commonwealth is insufficient to confer jurisdiction. As reflected in the sworn declarations of Wegner and Krovisky, which were uncontradicted by the plaintiff in the pertinent part, neither Wegner nor Krovisky: conducted business in Virginia, engaged in a persistent course of conduct involving Virginia, or derived substantial revenue from business carried on in Virginia. Because Wegner and Krovisky are not subject to jurisdiction under Virginia's Long Arm Statute, then out-of-state service of process could not have been effective on these non-resident defendants and they are accordingly not properly before the Court.

### B. Lack of Constitutionally Valid Basis for Exercise of Personal Jurisdiction

■ Even if the Court were to conclude that Defendants Wegner and Krovisky are subject to jurisdiction under Virginia's Long Arm Statute, this Court's exercise of personal jurisdiction would not be proper absent a determination that such an exercise of jurisdiction would be constitutionally permissible. To satisfy constitutional due process, a defendant must have certain minimum contacts with the forum state such that maintenance of a suit does not offend traditional notions of fair play and substantial justice. *See Weight v. Kawasaki Motors Corp.*, 604 F.Supp. 968 (E.D.Va.1985). Minuscule contacts such as telephone conversations, telex messages, and letters negotiating a business transac-

tion have been held insufficient to form a basis for in personam jurisdiction. *See Unidyne Corp. v. Aerolineas Argentinas*, 590 F.Supp. 391 (E.D.Va.1984). As such, the Court is of the view that it would offend notions of fundamental fairness if Defendants Wegner and Krovisky were subject to in personam jurisdiction in Virginia based on their telephone interviews with the media regarding (then) inmate Barry. The contacts of both of these defendants with this jurisdiction have been "too random, fortuitous, [and] attenuated," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985), to support this Court's exercise of either specific or general jurisdiction. Accordingly, Defendants Wegner and Krovisky will be dismissed because this Court lacks personal jurisdiction over them.

## II. FEDERAL TORT CLAIMS ACT ISSUES

■ Relying on the provisions of the Federal Tort Claims Act (FTCA), four of the defendants submit that they should be dismissed as to the non-constitutional claims in this action and that the United States should be substituted as the proper defendant. The FTCA creates liability for the United States government if the questioned act committed by the government employee is a tort in the state where the act occurred. The "exclusivity" provision of the FTCA, 28 U.S.C. § 2679(b)(1), provides that the remedy against the United States pursuant to the FTCA

for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting in the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded

without regard to when the act or omission occurred.

28 U.S.C. § 2679(b)(1).[2]

The crucial inquiry in reference to the substitution issue is thus whether the defendant employees were acting within the scope of their employment. Section 2679(d)(1) provides that upon certification by the Attorney General that a defendant employee was acting within the scope of his or her employment at the time of the incident which has given rise to the claim, such litigation "shall be deemed an action against the United States ... and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1). Pursuant to section 2679(d)(1), all of the defendants have submitted with their motion to dismiss certification by the designee of the Attorney General that each of the defendants was acting within the scope of his or her employment at all times relevant to the complaint in this action. While some courts have held that the district court must substitute the United States as the defendant upon receiving certification from the Attorney General's designee that the defendant employee was acting within the scope of his or her employment, *see Beran v. United States,* 759 F.Supp. 886, 890–91 (D.D.C.1991), defendants bow to the majority rule which allows for *de novo* judicial review of such determinations. *See Meridian Intern. Logistics, Inc. v. United States,* 939 F.2d 740, 744 (9th Cir.1991); *S.J. & W. Ranch, Inc. v. Lehtinen,* 913 F.2d 1538, 1540 (11th Cir.1990).

Plaintiff Barry asserts that Defendants Wegner, Ray, Bogdan, and Krovisky[3] clearly violated administrative rules and federal regulations concerning the release of confidential information. As such, plaintiff contends that these defendants could not have been acting within the scope of their employment. There are several flaws in Barry's argument. First, oddly enough, paragraphs 4–7 of plaintiff's complaint aver that "at all times relevant herein ... [each defendant was] ... acting in the course of his employment." Second, Barry does not convincingly argue that the administrative rules and federal regulations allegedly violated by Defendants Ray, Wegner, Bogdan, and Krovisky are properly applicable to the release of information regarding the incident in Barry's case. Even so, perhaps the most damaging feature of Barry's argument is that it is premised on an unduly restrictive view of what constitutes "scope of employment."

■ Barry would appear to argue that a federal employee necessarily acts outside the bounds of his or her employment whenever the employee's conduct violates a rule or regulation. The Fourth Circuit has clearly held, however, that a determination that a government employee has committed a tort or other statutory violation is not synonymous with a finding that the employee acted outside the parameter of the employee's duties. *See Wallen v. Domm,* 700 F.2d 124, 126 (4th Cir.1983). The *Wallen* Court reasoned that "[o]nce the wrongful acts are excluded from an exercise of authority, only innocuous activity remains to which immunity would be available. Thus, the defense would apply only for conduct for which it is not needed." *Id.* Even though *Wallen* indicates that Barry's narrow view of the scope of employment test is too restrictive, such a conclusion does not mandate a determination that the defendants acted within the scope of their employment in making allegedly improper contacts with the media regarding Barry's case. Determination of whether a particular act was within the scope of employment of a federal officer is made with reference to the applicable law of the state where the act or omission occurred. *See Farmer v. United States,* 261 F.Supp. 750 (D.C.Iowa), *affirmed* 400 F.2d 107 (8th Cir.1968).

---

**2.** Exceptions to the exclusivity provisions of the FTCA are permitted only for constitutional claims and for actions brought against a federal employee "for violation of a statute of the United States under which such an action against an individual is otherwise authorized." 28 U.S.C. § 2679(b)(2).

**3.** Of course it is the determination of this Court that the claims against two of these defendants, Wegner and Krovisky, will be dismissed on the ground that this Court lacks personal jurisdiction over them.

Virginia case law does not support the narrow reading of the "scope of employment" test which Plaintiff Barry advocates. None of the cases upon which Barry relies in his memoranda to the Court compels a finding here that the defendants acted outside the scope of their employment when they released information concerning Barry's Incident Report, even if such release did violate certain administrative procedures. On the contrary, the relevant case law suggests that the defendants did in fact act within the scope of their employment at all relevant times. For example, in *United Brotherhood of Carpenters and Joiners of America, AFL–CIO v. Humphreys*, Virginia's highest court quoted with approval the following definition of "scope of employment":

> In many cases no better definition can be given than the words themselves suggest. But, in general terms, it may be said that an act is within the course of employment if (1) it be something naturally and fairly incident to the business, and if (2) it be done while the servant was engaged upon the master's business and be done, although mistakenly or illadvisedly, with a view to further the master's interests, or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise from some external, personal motive on the part of the servant to do the act upon his own account.

127 S.E.2d 98, 102, *quoting* 2 Mechem on Agency, 2d ed., § 1960. As in *Wallen*, the employee in *Humphreys* was found to have acted within the scope of his employment even though he engaged in tortious (as-

saultive) behavior. Thus it is apparent under Virginia law that an employee can engage in tortious behavior and still act within the scope of his employment.

Applying the *Humphreys* standard of scope to the case at bar, clearly the defendants' contact with the media regarding Barry "naturally grew out of, or was incident to" each employee's attempt to perform prison business. Each defendant who had conduct with the Washington Post had such contact in his or her official capacity; there is no allegation or evidence that any of the defendants acted out of any personal or independent motive. As such, it is the determination of this Court that Defendants Wegner, Ray, Krovisky, and Bogdan were acting within the scope of their employment at all relevant times and that all non-constitutional claims against them should be dismissed and the United States substituted as the appropriate defendant pursuant to the FTCA.[4]

Defendants note that even upon the substitution of the United States as the proper defendant, plaintiff's non-constitutional claims must be dismissed because Barry has failed to exhaust fully the administrative remedies available to him. Arguing from the position that substitution of the United States is inappropriate in any event, Barry does not address the issue of whether he has exhausted all possible avenues of administrative relief. Title 28, Section 2675(a) of the United States Code does indeed provide that an action cannot be brought against the United States under the FTCA unless the claimant has first presented his claim to the appropriate federal agency.

**4.** From a procedural standpoint, the Court notes that the substitution mechanism under the FTCA is somewhat problematic. To shield federal employees from the liabilities inherent in litigation, the FTCA provides for the substitution of the United States as the proper defendant upon a showing that the employee acted within the scope of the individual's employment. The policies underlying the FTCA require that the United States be substituted as the proper defendant early in the process so that the individual defendants may be relieved expeditiously of the burdens of litigation. However, whether an individual acts within the scope of his or her

employment is a classic factual determination, reserved for the trier of fact. *See Broaddus v. Standard Drug Company*, 211 Va. 645, 179 S.E.2d 497, 504 (1971). There is a tension between reserving scope issues for the trier of fact and deciding the issue early in the litigation so as to assure that the proper defendant is before the Court and to effect the purposes of the FTCA. The significance of this tension in the case at bar is greatly reduced, however, because there is scant evidence to suggest that the defendants here were acting outside of the scope of their employment.

Although the defendants have filed a declaration of a Bureau of Prisons official stating that Barry has not exhausted his administrative appeals, the Court does not have any current information as to the posture of Barry's administrative appeals. The Court will, in the interest of fairness, reserve ruling on this issue pending receipt of information bearing on the status of Barry's administrative appeals.

## III. CONSTITUTIONAL ISSUES

### A. *Exhaustion of Administrative Remedies Before Pursuing Bivens Actions*

Until recently, the existence of a requirement that a federal prisoner fully exhaust available administrative remedies before commencing a *Bivens* action was a matter upon which courts disagreed. The Supreme Court's recent decision in *McCarthy v. Madigan*, — U.S. ——, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992), settles the debate, however, and conclusively holds that exhaustion of the administrative remedy procedure is not required before a federal prisoner can pursue a *Bivens* action in federal court for money damages. Accordingly, the defendants have properly withdrawn their argument that administrative exhaustion is required.

### B. *Immunity Issues*

To the extent that Barry's complaint articulates constitutional causes of action against the defendants, all of the defendants assert a form of immunity from suit.

### 1. *Absolute Immunity*

Disciplinary Hearing Officer Jackie Taylor contends that as a DHO employed by the Bureau of Prisons he is entitled to absolute immunity from the claims in Counts I and II of plaintiff's complaint. The availability of absolute immunity to this defendant hinges upon this Court's view of the continuing viability of the Supreme Court's decision in *Cleavinger v. Saxner*, 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). Recognizing that judges have been accorded absolute immunity from liability for damages actions for over a century, and that this protection had been extended to other federal officials who performed duties which were functionally comparable to that of judges, the majority in *Cleavinger* declined to extend the doctrine of absolute immunity to members of a prison disciplinary committee because their function was not perceived as a classic adjudicatory one. The *Cleavinger* Court found that the officials who comprised the disciplinary committee were not functionally comparable to those who had been afforded immunity in the past because the committee members were not independent hearing officers, but instead prison officials who had been temporarily diverted from their regular duties. The Court noted other hurdles to granting these individuals absolute immunity, among them the fact that the hearing officers were direct subordinates of the prisons' warden who reviewed their decisions and that the hearing officers were often called upon to make a credibility determination between an inmate and a co-worker.

Defendant Taylor asserts that recent modifications to the manner in which disciplinary charges are adjudicated in federal prisons justifies a reexamination of the applicability of *Cleavinger*. Apparently in 1988 the Bureau of Prisons abolished the disciplinary system then in place and replaced it with a professional and independent Disciplinary Hearing Officer. 28 C.F.R. § 541.16. The features which distinguish a DHO's role from the predecessor disciplinary committee are detailed in the declaration of Supervisor Rich Tilden, which is attached to the memorandum in support of Taylor's motion to dismiss or in the alternative for summary judgment. In brief, while DHO's are prison employees, DHO's do not adjudicate disputes at the institution at which they are regularly employed. In addition, an elaborate administrative scheme is now in place under which the warden does not have supervisory powers over the DHO. Defendant Taylor submits that given these reforms, it is now inaccurate to characterize the present DHO system as not "conducive to a truly adjudicatory performance." *Id.* at 204, 106 S.Ct. at 502.

Noting that DHO proceedings do not offer the accused the full range of procedural protection offered during a formal adjudication, Barry argues that DHO proceedings are not truly adjudicatory and that under *Cleavinger* DHO officers are not entitled to absolute immunity. In response, Taylor correctly notes that the primary focus of the *Cleavinger* opinion was the lack of independence of the fact-finder, rather than the nature of the procedural protection afforded the accused. Even so, the Court is not convinced that the disciplinary structure now in place is sufficiently different from the structure considered by the Supreme Court in *Cleavinger* to justify a finding that absolute immunity is appropriate for DHO Taylor. Accordingly, the Court finds that Taylor is not entitled to absolute immunity.

### 2. *Qualified Immunity*

All of the defendants maintain that they are entitled to qualified immunity from suit on any constitutional causes of action alleged by Barry which are not subject to dismissal on other grounds. Government officials are of course cloaked with qualified immunity to ensure that they can perform their duties free from the specter of endless and debilitating lawsuits. *See Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). The Supreme Court has recognized that the protection afforded by the doctrine of qualified immunity "is an *immunity from suit* rather than a mere defense to liability; ... it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (emphasis in the original).

■ Determination of a federal official's entitlement to the protection offered by qualified immunity involves an inquiry into whether the official has violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The test of qualified immunity is one of "objective reasonableness." *Malley v. Briggs*, 475 U.S. 335, 344,

106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986). Under this standard, Barry could prove that an official has violated his rights, but the defendants could nonetheless be entitled to qualified immunity if those rights were not clearly established or if a reasonable person in the officer's position could have failed to appreciate that his or her conduct would violate those rights. *Collinson v. Gott*, 895 F.2d 994, 998 (4th Cir. 1990) (Phillips J., concurring).

■ As to all of the defendants except Defendant Taylor, the question is whether by responding to press inquiries regarding Barry's alleged disciplinary infractions, the defendants violated clearly established constitutional or statutory rights of which a reasonable person would have known. Defendants plausibly argue that because no authority has previously espoused the view that inmates possess a constitutional right to privacy which prohibits prison officials from responding to press inquiries, such a prohibition cannot be "clearly established" law. Because there has been no showing that the defendants' conduct violated clearly established constitutional law, it is the determination of this Court that the defendants who released information to the press are entitled to qualified immunity as to the constitutional claims asserted by Barry against them. The Court observes that this result comports with the recent trend of Supreme Court decisions, which has been toward enlarging the qualified immunity of federal officers. *See* Chemerinsky, *Federal Jurisdiction* § 8.6.

■ Barry's constitutional claims against Defendant Taylor emanate from the disciplinary hearing process. Count I of Barry's complaint alleges that Barry was deprived of his Sixth Amendment right to counsel at his disciplinary hearing as well as his right to remain silent. In Count II, Barry alleges that the following acts or omissions constituted violations of his substantive and procedural due process rights under the Fifth Amendment: Barry was given insufficient notice of the hearing; Barry was not given the opportunity to confront or cross-examine his accusers; the hearing was not conducted in good faith

because their was no determination of the reliability and credibility of Robertson and Bromley and their wives; acceptance of evidence of misconduct received from four individuals to support a finding of guilt was insufficient; material evidence regarding Robertson's racial motivations in accusing Barry of improper conduct was an abuse of discretion which in part deprived Barry of a fair and impartial hearing; and Taylor impermissibly pre-determined Barry's guilt.

Based on a thorough review of the record before the Court and the applicable law, it is the determination of this Court that Barry has failed to show that Taylor violated "clearly established law" in conducting Barry's hearing in the manner in which he did. While the more substantive allegations in Count II of Barry's are addressed in turn below, this Court discerns no action taken by Taylor in connection with Barry's hearing that violates any established legal principles regarding the operation of prisoner disciplinary hearings.

■ First, Barry's argument that he was given insufficient notice prior to his disciplinary hearing must be rejected because it rests on a fundamental misunderstanding of the rights accorded a prisoner in connection with a disciplinary proceeding. While Barry argues that the failure of prison officials to provide him with 24 hours notice regarding the date on which the hearing would convene violated his constitutional rights, we do not interpret the law as requiring the form of notice urged by Barry here. As applied to the case at bar, the Court interprets the "24–hour" rule discussed in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), to require that a prisoner be given 24 hours notice *of the charges* against him prior to the commencement of a disciplinary hearing or proceeding. The record before the court indicates, and Barry does not dispute, that Barry was given notice of the charges pending against him several days before the hearing before DHO Taylor. The Court rejects Barry's argument that *Wolff* should be read to require 24 hours notice prior to the commencement of

hearing proceeding. *See also Dowdy v. Johnson,* 510 F.Supp. 836, 839 (E.D.Va. 1981) (construing *Wolff* as requiring a waiting period between notice of the charges and commencement of the hearing). Accordingly the Court finds that there was no constitutional error with respect to the notice given to the plaintiff regarding the disciplinary proceedings and charges against him.

■ Barry's complaint that Taylor impermissibly denied him the right to call his accusers, inmates Robertson and Bromley, as witnesses at trial is likewise also foreclosed by the decision of the Supreme Court in *Wolff.* While the high court has held that an inmate may call witnesses to testify on the inmate's behalf, the *Wolff* Court specifically stopped short of allowing an inmate to call adverse witnesses in order to subject them to cross-examination. *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The *Wolff* Court stated that constitutionally "adequate bases for decisions in prison disciplinary cases can be arrived at without cross-examination." *Id.* at 568, 94 S.Ct. at 2980.

■ Furthermore, Barry's claim that he was denied his constitutional right to counsel at his disciplinary hearing cannot pass constitutional muster. The Supreme Court has unambiguously held that an inmate possesses no right to either retained or appointed counsel in prison disciplinary hearings regardless of whether the charges involve conduct punishable as a crime under state law. *See id.* at 570, 94 S.Ct. at 2981; *Baxter v. Palmigiano,* 425 U.S. 308, 314–15, 96 S.Ct. 1551, 1555–56, 47 L.Ed.2d 810 (1976).

■ *Baxter v. Palmigiano* also thwarts Barry's contention that he had a constitutional right to remain silent at his disciplinary hearing. Barry was told at the commencement of the disciplinary hearing that his silence could be used against him. Complaint 20. While the "right to remain silent" is a universally recognized and crucial protection available to the defendant at various stages of a criminal proceeding, the Court has long held that "[p]rison disciplinary proceedings are not part of a criminal

prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff,* at 556, 94 S.Ct. at 2974. Later in *Baxter v. Palmigiano,* the Court recognized as constitutionally permissible a disciplinary hearing structure in which a defendant was advised of his right to remain silent, notified that his silence could be used against him, and informed that his election to remain silent would not in and of itself be sufficient to support a finding of guilt on the charged infraction. *Baxter v. Palmigiano,* at 317, 96 S.Ct. at 1557. In short, the *Baxter* Court held that permitting an adverse inference to be drawn from an inmate's silence at his disciplinary hearing is not a constitutionally invalid practice so long as the inmate's election to remain silent is not the sole basis for the inmate's conviction of a particular offense.

As a matter of law, the Court concludes that Barry was not denied his constitutional right to remain silent. Barry signed a form entitled "Inmate Rights at Disciplinary Hearing," which states as follows:

> As an inmate charged with a violation of Bureau rules or regulations referred to the Discipline Hearing Officer (DHO) for disposition, you have the following rights: 4. The right to present a statement or to remain silent. Your silence may be used to draw an adverse inference against you. However, your silence alone may not be used to support a finding that you committed a prohibited act[.]

Defendant Taylor's Memorandum, Exhibit 2.

Barry does not refute that he signed this form, but seems to rely on the argument, clearly foreclosed by *Baxter,* that his election to remain silent should not have been used against him. Given that Barry was advised of his rights in accordance with *Baxter,* and given the existence of additional evidence to support Barry's conviction other than his mere election to remain silent, it is this Court's determination that Barry's contention that he was denied his right to remain silent is erroneous.

■ As to Barry's evidentiary claims, including the charge that Taylor improperly excluded certain evidence from consider-

ation, and that Taylor based his decision on evidence insufficient to support a conviction, Barry's claims are clearly constitutionally inadequate. In *Superintendent of Schools v. Hill,* the Supreme Court directly addressed the issue of the quantum of evidence necessary to sustain the findings of a disciplinary hearing fact-finder. 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). The *Hill* Court expressed the applicable standard of review in the following restrictive terms:

> We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced ..." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. We decline to adopt a more stringent evidentiary standard as a constitutional requirement ... The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.

*Id.* at 455–56, 105 S.Ct. at 2773–74.

Analyzed under this highly deferential standard, there was clearly some evidence to support Taylor's finding that Barry was guilty of engaging in sexual activity with his female visitor on December 29, 1991. Given the existence of such evidence, this Court will not second-guess the decision of the DHO in Barry's case. No further factual inquiry is necessary to support this Court's determination that the evidence supporting the challenged decision in this case was constitutionally adequate. Summary judgment in favor of Defendant Taylor on this issue is therefore appropriate.

Finally, Barry maintains that a decision of guilt had been reached in his case prior

to Barry's hearing before the DHO. Barry's claim in this regard is a serious accusation, but all that Barry has tendered to the Court is an assertion completely unsupported by any factual allegations. The United States Court of Appeals for the Fourth Circuit has held that a heightened pleading standard is appropriate in actions against government officials. *Dunbar Corp. v. Lindsey,* 905 F.2d 754 (4th Cir. 1990). The justification for a more precise pleading requirement is that defendant government officials must be put on notice of the nature of the claim sufficient to enable them to prepare a motion for summary judgment if the doctrine of qualified immunity is to have its desired effect. *See Martin v. Malhoyt,* 830 F.2d 237, 254 (D.C.Cir.1987). As to the allegation in Barry's complaint that DHO Taylor pre-judged Barry's guilt, the plaintiff has failed to meet the heightened pleading standard endorsed in *Dunbar.* Accordingly, unless plaintiff files, within ten (10) of the date of this order, an amended complaint setting out specific facts in support of this allegation, the same shall stand dismissed.

As to all of the constitutional claims asserted against Defendant Taylor, Barry can point to no established authority which would support a ruling by this Court that in conducting Barry's hearing, Taylor violated constitutional rights of which a reasonable person would have known. Accordingly Defendant Taylor is entitled to qualified immunity from the constitutional claims asserted herein by Barry, and all such claims will be dismissed as to Defendant Taylor.

*Conclusion:*

Based on the foregoing it is the determination of this Court that the motions of the remaining five defendants to dismiss, or in the alternative for summary judgment, and simultaneous motion to substitute the United States as the proper named defendant with respect to the non-constitutional claims in this action will be granted.

An appropriate Order shall issue. Let the Clerk send a copy of this Memorandum and the accompanying Order to all counsel of record.

## ORDER

This matter is before the Court on the individual motions to dismiss, or alternatively motions for summary judgment, and simultaneous motions to substitute the United States as the proper defendant with respect to all non-constitutional claims, filed by Defendants Wegner, Krovisky, Bogdan, Ray and Taylor. For the reasons stated in the accompanying Memorandum, and deeming it just and proper so to do, it is ADJUDGED and ORDERED that:

(1) Defendant Wegner's motion to dismiss is GRANTED on the grounds that this Court lacks personal jurisdiction over her.

(2) Defendant Krovisky's motion to dismiss is GRANTED on the grounds that this Court lacks personal jurisdiction over him.

(3) As to plaintiff's non-constitutional claims, the motions of Defendants Bogdan and Ray to substitute the United States as the proper defendant before the Court are GRANTED. Pending the receipt of information regarding the status of plaintiff's administrative appeals, the Court reserves decision as to whether the non-constitutional claims in this action should be dismissed due to plaintiff's failure to exhaust his administrative remedies. The plaintiff is hereby DIRECTED to file such information with the Court within ten (10) days of the date of this Order.

(4) As to plaintiff's claim that Defendant Taylor reached a decision of guilt in Barry's case prior to conducting a formal hearing, Defendant Taylor's motion to dismiss this claim will be granted, and this claim will stand dismissed unless plaintiff files an amended complaint setting forth specific facts in support of this allegation within ten (10) days of the date of this Order.

(5) As to the balance of plaintiff's constitutional claims, the motions of Defendants Bogdan, Ray, and Taylor to dismiss these claims on the grounds that the defendants are entitled to qualified immunity from suit are hereby GRANTED.