Kenneth B. NICHOLS

v.

**MARYLAND CORRECTIONAL INSTITUTION—JESSUP, et al.**

**Civil Action No. DKC 99–2738.**

United States District Court, D. Maryland.

Feb. 1, 2002.

Reginald W. Bours,III, Rockville, MD, Gwyn Hoerauf, Germantown, MD, for plaintiff.

Glenn W. Bell, Maryland Attorney General's Office, Baltimore, MD, J. Joseph Curran, Jr., Office of Attorney General, Baltimore, MD, for defendants.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Plaintiff, Kenneth Nichols, a former prisoner at Maryland Correctional Institution–Jessup, filed suit alleging constitutional violations, pursuant to 42 U.S.C. § 1983, against Defendants Sergeant Alexis Cotay, Warden William Filbert, Hearing Officer John Sandstrom, and Maryland Correctional Institution–Jessup (MCI–J). Presently pending before the court is the Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment. The issues have been fully briefed and no hearing is deemed necessary. Local Rule 105.6. For the reasons that follow, the court shall grant the motion.

## I. Background

This litigation arises from an assault upon Nichols by his cellmate, David Gregg, during the afternoon of July 13, 1999. Gregg was assigned to be Nichols' cellmate on or about July 7, 1999. Nichols asserts that Gregg began threatening his life shortly after they were placed together. Paper No. 39, p. 3. He claims that he told Cotay on July 12 and 13, 1999 that he was being threatened. Nichols states "I told him that he was down there banging on the bunk, and he was making threats towards my life.... Like he was going to kill me. He talking about getting a knife and all that stuff" on July 12. Paper No. 39, Ex. E, p. 21. He asserts that he "told [Cotay] the same thing" on July 13. Id. at p. 26. According to Nichols, Cotay responded, "I don't roll like that. Deal with it." when Nichols notified him of the threats Gregg was making. Paper No. 39, Ex. E, p. 34. Cotay recalls the circumstances differently, testifying at the adjustment hearing regarding the assault that Nichols wanted a move, Paper No. 38, Inmate Hearing Record, July 16, 1999, but later stating in an incident report, signed August 4, 1999, that Gregg had requested a change. Paper No. 39, Ex. G. Cotay stated in his declaration he told the requesting inmate he would have to see Captain Dawson, who handled cell moves, and, if he had been told it was a life-threatening situation, one or more of them could have been moved to protective custody. Paper No. 38, Ex. 1.

As a result of the injuries sustained from the beating by Gregg, Nichols was seen in the dispensary on the afternoon of July 13 and was admitted to the infirmary that day. Nichols was temporarily blinded and his entire face was swollen and deformed. While facial x-rays were negative for fractures, Nichols was treated for facial trauma. His injuries were severe enough that he was hospitalized for approximately three days. The injuries he suffered on July 13, 1999, resulted in chronic pain, recurring ear infections, and ongoing treatment at the Ear, Nose and Throat Clinic (ENT) through July 2000. Nichols asserts that there was a substantial delay in accessing medical care, but admits he was seen repeatedly by medical professionals.

As part of his treatment for the injuries suffered on July 13, 1999, and the severe ear pain that followed, Nichols was prescribed Tylenol # 3, also known as Tylenol with Codeine, by the medical personnel he was seeing at MCI–J. On approximately December 26, 1999, Nichols submitted to urinalysis for drug screening and on January 5, 2000, Nichols was charged with an Inmate Rule Violation for violating Institutional Rule # 14 by testing positive for opiates. A hearing was held January 10, 2000, and Nichols was found guilty of violating Rule # 14, based on Hearing Officer Sandstrom's determination that the regis-

tered level of opiate in his urinalysis was above that of an over-the-counter medication. Defendants admit that Officer Sandstrom was mistaken in assuming that Tylenol # 3 was over-the-counter Tylenol. Based on Sandstrom's determination, Nichols was sentenced to disciplinary segregation for 60 days. Warden Filbert affirmed the sentence on January 13, 2000, but, after meeting with Nichols' father, Kirk Nichols, on January 24, 2000, Nichols was granted a new hearing. Nichols' rehearing was held February 7, 2000, and he was found not guilty. On April 12, 2000, Warden Filbert amended Nichols' wage and commitment records to reflect an uninterrupted job assignment from December 27, 1999, the day after his positive drug test. Nichols spent less than one month in disciplinary segregation between his guilty verdict on January 10, 2000 and his rehearing on February 7, 2000.

Nichols filed his original complaint *pro se* on September 8, 1999. On April 6, 2000, the court appointed counsel to represent Nichols. On June 15, 2000, Nichols, now having the benefit of counsel, filed an amended complaint containing four counts against the four defendants: Count One-failure to protect Nichols from Gregg; Count Two-failure by prison officials to provide him with reasonable and adequate medical care; Count Three-failure to investigate when Nichols tested positive for opiates and otherwise to provide due process in disciplinary proceedings; Count Four-retaliation against Nichols for pursuing his § 1983 action in federal court. The Amended Complaint does not specify which Defendant or Defendants is or are responsible for which claim. A fair reading of the facts and Plaintiff's memorandum, however, would bring Count One against MCI–J, Sgt. Cotay, and Warden Filbert; Count Two, MCI–J alone; Count Three, MCI–J, Warden Filbert, and Hearing Officer Sandstrom; and Count Four, MCI–J, Warden Filbert, and Hearing Offi-

cer Sandstrom. The court will proceed on that assumption.

## II. Standard of Review

### A. Motion to Dismiss

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir.1997). Such a motion ought not to be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court, however, need not accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir.1989), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir.1979).

### B. Motion for Summary Judgment

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.,*

181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue of material fact. Fed.R.Civ.P. 56(c); *Pulliam,* 810 F.2d at 1286 (citing *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505.

In *Celotex,* the Supreme Court stated:

In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.,* 736 F.2d 946, 958–59 (4th Cir.1984) (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd,* 388 F.2d 987 (4th Cir.1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

### III. Analysis

#### A. Maryland Correctional Institution—Jessup

■ Defendants assert that the Maryland Correctional Institution–Jessup is immune from suit under the Eleventh Amendment as a state agency, because it is not a "person" for purposes of 42 U.S.C. § 1983. The Eleventh Amendment to the United States Constitution is a bar to suits against a State for damages in federal court, unless Congress has exercised its power under § 5 of the Fourteenth Amendment to override this immunity or the State has waived it. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). With regard to claims under 42 U.S.C. § 1983, neither method of overcoming the immunity has occurred. The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.[1]

---

**1.** The Supreme Court also has held that the fundamental rule of federal jurisprudence exemplified by the Eleventh Amendment—that

unconsenting states may not be sued in federal court by private parties—reaches attempts by citizens to sue their own states. *Atascade-*

The definition of "State" has been expanded out of necessity to include state agencies, such as the state prison system. "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (citing *Florida Department of Health v. Florida Nursing Home Assn.,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981) *(per curiam); Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) *(per curiam* )).

Nichols does not even argue in his opposition that the State of Maryland has waived its immunity with respect to MCI–J. Accordingly, all counts against Maryland Correctional Institution—Jessup will be dismissed for failure to state a claim.

## B. Sergeant Alexis Cotay

 In Count One, Plaintiff asserts that Sgt. Cotay violated his rights by failing to protect him from a violent, threatening cellmate. Two elements must be established for a claim alleging failure to protect as set forth in *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994): 1) the deprivation must be sufficiently serious; and 2) the prison official must have a state of mind that is one of " 'deliberate indifference' to inmate health or safety." Sgt. Cotay agrees that the injury suffered by Nichols was sufficiently serious to meet the first element, but asserts that Nichols cannot succeed in demonstrating deliberate indifference on the part of Cotay. In *Farmer,* the Court held that deliberate indifference means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 114 S.Ct. 1970. This is a high standard to meet, as plaintiff must prove not only that defendant was aware of the "facts from which a reasonable person might have inferred the existence of the substantial and unique risk", but that defendant actually drew the inference. *Rich v. Bruce,* 129 F.3d 336, 340 (4th Cir.1997). The Fourth Circuit has held that "[t]rue subjective recklessness requires knowledge both of the general risk and also that the conduct is inappropriate in light of that risk." *Id. Rich* was decided on appeal from a finding of the district court after a bench trial, where the trial judge made specific findings concerning the Defendant's state of mind. It made clear, however, that actual knowledge of facts from which a reasonable person might have inferred the existence of substantial and unique risk to a plaintiff is not enough. In addition, a plaintiff must prove that the defendant was aware that his conduct was inappropriate in light of the risk. A defendant who unsoundly, stupidly, or negligently fails to appreciate the risk is not liable under *Rich.*

 Although there is a factual dispute as to whether Nichols or Gregg was the prisoner who requested a change of cellmate and regarding precisely what specific information was told to him about any threat, Cotay has consistently stated that he was unaware of any threats and that he was only aware that one man wanted to move. He testified that:

"Mr. Gregg had just moved in with Mr. Nichols. Neither inmate indicated to me that there was a problem. I told them it would be their responsibility to see Captain Dawson, who was responsi-

ro State Hosp. v. Scanlon, 473 U.S. 234, 238, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)(citing

Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)).

ble for cell moves. I told them that we do not make random moves because of the overcrowded situation of the institution. Had there been a life-threatening situation reported to me, one or both of the inmates could have been moved to protective custody. That was not the case."

Paper No. 38, Ex. 1.

Plaintiff relies on Sgt. Cotay's alleged response of "I don't roll like that. Deal with it," to show deliberate indifference. Paper No. 39, Ex. E, p. 34. To the contrary, that response, even if true, when coupled with the advice to talk to the captain concerning a cell change and the acknowledgment that assignment to protective custody would be ordered if a threat were truly perceived, unequivocally prove that Cotay did not draw the inference that his failure to act would increase the danger to Plaintiff. Instead, the evidence proves only that Cotay did not perceive that there was an imminent threat to Plaintiff such that his refusal to take immediate action was inappropriate. Nichols has forecast no evidence sufficient to show that Cotay drew the inference that is required to prove deliberate indifference to establish an Eighth Amendment violation. Therefore, the motion for summary judgment is granted in favor of Sergeant Cotay.

## C. Hearing Officer John Sandstrom

▇ A hearing officer in a prison disciplinary proceeding may be liable if his conduct "violated 'clearly established law' in conducting [the] hearing in the manner in which he did." *Barry v. Whalen*, 796 F.Supp. 885, 895 (E.D.Va.1992). If "no action taken by [the hearing officer] violates any established legal principles re-

garding the operation of prisoner disciplinary hearings", the officer is not liable. *Id.* Only Count Three, alleging that Nichols' due process rights were violated by a failure to investigate the allegation that he had violated Rule # 14, and Count Four, alleging retaliation for filing a civil rights complaint by denying Nichols his due process rights in the disciplinary proceeding regarding his violation, pertain to Sandstrom.[2]

▇ In Count Three, Nichols alleges that his due process rights were violated by a failure to investigate minimally the allegation that he was in violation of Rule # 14 when he tested positive for opiates. The due process standards for prison disciplinary proceedings were established in *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), which held that "there must be mutual accommodation between institutional needs and objective and the provisions of the Constitution that are of general application." The Court held that prisoners are entitled to procedural due process, but that they are not entitled to the "full range of procedures" in prison disciplinary hearings. *Id.* at 561, 94 S.Ct. 2963. Since *Wolff*, the Court has stated that "[t]he punishment of incarcerated prisoners ... does not impose retribution in lieu of a valid conviction .... It effectuates prison management and prisoner rehabilitative goals." *Sandin v. Conner*, 515 U.S. 472, 485, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In *Sandin*, the Court held that "discipline in segregated confinement [does] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* at 486, 115 S.Ct. 2293. The only action taken against Nichols after the

---

**2.** Defendant does not assert he is entitled to quasi-judicial immunity. The Supreme Court has held that hearing officers in prison disciplinary proceedings are not entitled to absolute immunity, but may be entitled to qualified immunity. *Cleavinger v. Saxner*, 474 U.S. 193, 202–08, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985).

administrative hearing was placement in administrative segregation, which is not a protectible liberty interest. Nichols was also removed from a job assignment but, after his appeal was successful, the wage and commitment records were changed to reflect an uninterrupted assignment. Because placement in segregation, by itself, is not "a major disruption in his environment," Nichols was not denied his right to due process by Sandstrom. Therefore, the motion for summary judgment is granted in favor of Hearing Officer John Sandstrom.

## D. Warden William Filbert

It is axiomatic that liability under 42 U.S.C. § 1983 must be premised on personal conduct and cannot rest on *respondeat superior*. *Monell v. Dept. of Social Services*, 436 U.S. 658, 691–695, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A supervisor may be liable if his alleged supervisory indifference or tacit authorization of subordinate misconduct is a causative factor in a person's constitutional injuries. It is correct that "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.1984). In the context of a failure to protect claim, however, a plaintiff must prove not only that "prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" *Id.* at 373, citing *Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir. 1980). A supervisor's "continued inaction in the face of documented widespread abuses," id., might prove such a state of mind. "The proper question is whether [a supervisor] acted wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm." *Moore v. Winebrenner*, 927 F.2d 1312, 1315 (4th Cir.1991). If these requirements are not met, a supervisor is not directly liable.

Plaintiff only discusses the failure to protect claim and the allegedly inadequate disciplinary proceedings in connection with Filbert. Thus, only Counts One, Three, and Four are at issue. Nichols alleges that Filbert's failure to discipline Sergeant Cotay for Cotay's willful failure to protect Plaintiff served to condone his actions, thereby becoming a "causative factor in the constitutional injuries [inflicted] on those committed to their care." *Slakan v. Porter*, 737 F.2d 368, 372 (1984). Nichols does not provide any evidence that Filbert was deliberately indifferent to Gregg's threat against him. There is no evidence that Filbert knew of Gregg's threat against Nichols prior to the attack, and events that occur later are irrelevant. Plaintiff cannot satisfy the burden under *Slakan* "by pointing to a single incident or isolated incidents" as he does here. *Id.* at 373. Nichols, therefore, fails to offer sufficient evidence that Filbert was deliberately indifferent to the threat against him and he has not shown that there was a pervasive and unreasonable risk of harm existing at MCI–J.

Nichols points to isolated incidents—the failure to respond to his request to be moved, an alleged failure to provide medical care, despite the fact that there is no dispute that Nichols was seen frequently by the ENT clinic, and his guilty verdict at the Rule Violation hearing, which was reversed on appeal a month later after Nichols protested to Warden Filbert—in an attempt to demonstrate a pattern of indifference. These are incidents that occurred after the assault, most of which are not constitutional violations, and do not characterize a pattern of deliberate indifference by Filbert. The fact that Sergeant Cotay had one prior documented disciplinary sanction against him does not consti-

tute a pattern of misconduct. As the court in *Slakan* so aptly put it, a supervisor cannot "reasonably be expected to guard against the deliberate ... acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Slakan*, 737 F.2d at 373. Plaintiff does not allege that Filbert had—or condoned—a policy of ignoring inmate requests to change cell assignments based on threats of violence, nor does he adequately allege that there was a deliberate and intentional pattern of depriving inmates of their due process rights, depriving inmates of medical care, or retaliation for filing a claim.

Plaintiff also alleges that Filbert deprived him of his due process rights by initially denying his appeal for review of his Rule 14 violation as non-meritorious. However, the discipline imposed upon Nichols by Sandstrom did not violate his due process rights under *Sandin v. Conner*, 515 U.S. 472, 485, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), because "placement in segregation is not a major disruption in his environment". Nichols' placement in administrative segregation does not afford him "a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff*." *Id.* at 487, 115 S.Ct. 2293. In addition, Nichols fails to mention that Filbert granted his appeal for review on January 24, 2000, just two weeks after the initial hearing. Filbert also corrected Nichols' records to reflect uninterrupted work eligibility. Therefore, Nichols has failed to identify a liberty or property interest of which he has been deprived by Filbert as alleged in Count Three.

This record also fails to support Nichols' claim of retaliation in Count Four, as it is well-established that Filbert reopened his case for appeal within the prison disciplinary system and modified his wage and commitment records so that they did not reflect an interruption from the date of his initial hearing. His actions indicate that he was attempting to protect Nichols' civil rights, rather than retaliate for a civil rights complaint.

Plaintiff has not met his burden of establishing indifference under the standards of *Slakan* or deprivation of his due process rights under *Sandin*. Therefore, the motion for summary judgment is granted in favor of Filbert.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss is granted in favor of Maryland Correctional Institution—Jessup on Counts One through Four. The motion for summary judgment is granted in favor of Sergeant Alexis Cotay, Hearing Officer John Sandstrom, and Warden William Filbert. A separate order will be entered.

### ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this ___ day of February, 2002, by the United States District Court for the District of Maryland, ORDERED that:

1. The claims against Maryland Correctional Institution—Jessup BE, and the same hereby ARE, DISMISSED;

2. The motion of Warden William Filbert, Hearing Officer John Sandstrom, and Sgt. Alexis Cotay for summary judgment BE, and the same hereby IS, GRANTED and JUDGMENT BE, and the same hereby IS, ENTERED in favor of those Defendants and against Kenneth B. Nichols on all counts; and

3. The clerk will transmit copies of the Memorandum Opinion and this Order to counsel for the parties and will CLOSE this case.