WAG–AERO, INC., A Wisconsin Corporation, Plaintiff,

v.

UNITED STATES of America, Carol B. Hallett, Commissioner, United States Customs Service, Robert A. Becker, Special Agent, United States Customs Service, A. Mary Schiavo, Inspector General, United States Department of Transportation, Victor M. Gryniewicz, Special Agent, Office of the Inspector General, United States Department of Transportation, Thomas C. Richards, Administrator, Federal Aviation Administration, and Certain Unknown Federal Agents In Their Official Capacities, Defendants.

No. 92–C–1239.

United States District Court, E.D. Wisconsin.

Nov. 26, 1993.

See also 796 F.Supp. 394.

Paul F. Linn, Joseph A. Gemignani, Douglas P. Dehler, Michael, Best & Friedrich, Milwaukee, WI, for plaintiff.

Leura J. Garrett, U.S. Dept. of Justice, Civil Div., Washington, DC, for U.S.

Alexander J. Millard, U.S. Dept. of Transp., John Knudsen, Federal Aviation Admin., Washington, DC, Jayne T. Romanchek, U.S. Customs Service, Chicago, IL, for Robert A. Becker, Victor M. Gryniewicz, Thomas C. Richards, A. Mary Schiavo, Carol B. Hallett.

## DECISION AND ORDER

CURRAN, District Judge.

In June of 1992, United States customs agents acting pursuant to a warrant searched the premises of the Wag–Aero corporation where they seized inventory and business records. Shortly thereafter, the company filed this civil suit seeking a return of its business property. *See* Federal Rule of Criminal Procedure 41(e). Wag–Aero is suing the United States of America and five of its officers: Carol B. Hallett, Commissioner of the United States Customs Service; Robert A. Becker, special agent of the United States Customs Service; A. Mary Schiavo, Inspector General of the United States Department of Transportation; Victor A. Gryniewicz, special agent of the Office of the Inspector General; Thomas C. Richards, Administrator of the Federal Aviation Agency,

and "certain unknown federal agents in their official capacities."[1]

In addition to the return of its property, the Plaintiff also claims its civil rights were violated and seeks an injunction preventing the "unlawful" use of the business records seized; an order declaring that the Defendants have violated the Plaintiff's constitutional rights; an order enjoining the Defendants from using the materials seized at any hearing or trial; an order enjoining the Defendants from making false or misleading representations to Wag–Aero customers; an order requiring the Defendants to notify Wag–Aero customers in writing that they had no basis for sending the customers a circular stating that Wag–Aero parts are faulty or unsafe. The Plaintiff also seeks money damages from the individual Defendants in compensation for loss of the property and goodwill. In addition to these claims, Wag–Aero amended its Complaint to ask for injunctive relief for violations of the Paperwork Reduction Act, 44 U.S.C. §§ 3501–3520. The Plaintiff says that this court has federal question jurisdiction over these claims, 28 U.S.C. § 1331, and can also exercise "the general equitable jurisdiction of the federal courts." *See* Plaintiff's First Amended Complaint at ¶ 18.

The Defendants have not answered, but have moved to dismiss all the claims against them pursuant to Federal Rule of Civil Procedure 12(b) on the grounds that this court does not have personal jurisdiction over three of the individual Defendants who have no contacts with Wisconsin; that the Plaintiff has not stated a claim for any violation of its constitutional rights upon which relief can be granted; that the individual Defendants are entitled to qualified immunity; and that the Plaintiff is not entitled to the injunctive or declaratory relief sought. This motion is now fully briefed and ready for decision.

## I. ALLEGATIONS OF THE COMPLAINT

Wag–Aero is a corporation which has its principal place of business in the Township of Lyons, Wisconsin. On June 10, 1992, agents of the United States Customs Service and Department of Transportation Office of the Inspector General entered the premises and served a search warrant that had been issued on June 4, 1992, by United States Magistrate Judge Robert Bittner. The application and affidavit for the search warrant was prepared and filed by Defendant Robert A. Becker of the United States Customs Service. The Plaintiff says that the other four individual Defendants supervised and directed the application, along with other unknown agents in their "official capacities."

Wag–Aero alleges that Becker's application and affidavit "contained numerous false and misleading statements made with deliberate or reckless disregard of the truth and of the constitutional rights of Wag–Aero." Plaintiff's First Amended Complaint at ¶ 13. Thus, the Plaintiff concludes that the search warrant was issued without probable cause. Nevertheless, under the direction of Defendants Becker and Gryniewicz agents searched the property and confiscated business records and approximately $381,000.00 worth of inventory. Wag–Aero claims that the agents exceeded the scope of the warrant and conducted a general search.

The Plaintiff says that "[I]t appears that the inventory was seized on the pretext that it was imported in purported violation of certain federal customs regulations purportedly requiring an importer to certify that all imported aircraft parts have been approved by the Federal Aviation Administration (FAA) to avoid the imposition of certain import duties and tariffs."[2] *Id.* at ¶ 16. After

1. In contravention of a wide body of well-established law, the Plaintiff, which is represented by an attorney, has failed to specify whether the named individuals are being sued in their official or personal capacities or both on any of the claims for relief. Because they are being sued for both injunctive relief and money damages, the court will assume that the Plaintiff intends to sue the five individuals in both capacities.

2. The Becker affidavit, which is appended to the Amended Complaint, asks that the warrant be issued to search for evidence that Wag–Aero violated 18 U.S.C. § 542, which provides, in relevant part, that:

Whoever enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, decla-

the search and seizure, Wag–Aero requested rulings from the Customs Service with respect to whether duty was owed on the seized property. *See* 19 C.F.R. § 177. According to Wag–Aero, some of the "binding rulings" which it has received so far establish that four of the items seized are appropriately categorized as duty free under the Harmonized Tariff Schedule of the United States even though they were not FAA approved. Wag–Aero believes that this belies Defendant Becker's allegation that "with these commodities, there is no other discernable reason to claim duty-free status except to assert the parts were FAA approved." Plaintiff's First Amended Complaint at ¶ 21. The Plaintiff goes on to assert that: "Given Mr. Becker's position as a Customs Special Agent, as well as the positions of the other Defendants as government officers presumably familiar with federal customs regulations, this assertion was either deliberately false or was made with a reckless disregard of the truth." *Id.*

With respect to other items for which Wag–Aero has obtained "binding rulings," the Plaintiff claims that it paid the appropriate duty or overpaid the amount due. Therefore, Wag–Aero believes that Defendant Becker's conclusion that "such items constitute evidence of a crime and should be seized was either deliberately false or was made with reckless disregard of the truth." *Id.* at ¶ 22.

Wag–Aero concedes that it has not received "binding rulings" as to all the items seized. It also admits that the Customs Service determined that it had not paid the duty owed for certain "radios" which were seized. However, the company says that it disputes the Customs Service's ruling on the radios based upon advice it has received from a licensed import broker. According to Wag–Aero, the Customs Service has not attempted to collect any additional duty due and no criminal proceedings have been instituted in the months following the search and seizure.

## II. *LEGAL STANDARDS GOVERNING MOTION TO DISMISS*

■ A motion to dismiss under Federal Rule of Civil Procedure 12(b) can be granted if it appears from the allegations of the complaint and the attached exhibits that the Plaintiff can prove no set of facts which would entitle it to relief. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Beam v. IPCO Corporation,* 838 F.2d 242, 244 (7th Cir. 1988). A plaintiff may not avoid dismissal, however, simply by attaching bare legal conclusions to narrated facts which fail to outline the basis of its claims. *See Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d 648, 654 (7th Cir.1984) (complaint which merely recites statutory language and related legalese but fails to allege minimal material factual allegations outlining violations of the law insufficient). *See also Gomez v. Illinois State Board of Education,* 811 F.2d 1030, 1033 (7th Cir.1987) (court not bound by plaintiff's legal characterization of the facts); *Strauss v. City of Chicago,* 760 F.2d 765, 767–68 (7th Cir. 1985) (absence of any facts to support plaintiff's claim renders allegations mere legal conclusions subject to dismissal).

■ In this case the Plaintiff has attached the following exhibits to its Amended Complaint: Search Warrant (Exhibit A); Application and Affidavit for Search Warrant (Exhibit B); Search Warrant with evidence log attached (Exhibit C); and Federal Aviation

---

ration, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance, or makes any false statement in any declaration without reasonable cause to believe the truth of such statement, or procures the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement, whether or not the United States shall or may be deprived of any lawful duties; or

Whoever is guilty of any willful act or omission whereby the United States shall or may be deprived of any lawful duties accruing upon merchandise embraced or referred to in such invoice, declaration, affidavit, letter, paper, or statement, or affected by such act or omission—

Shall be fined for each offense not more than $5,000 or imprisoned not more than two years, or both.

Nothing in this section shall be construed to relieve imported merchandise from forfeiture under other provisions of law.

18 U.S.C. § 542.

Administration circular (Exhibit D). Because these written instruments are incorporated by reference into the Amended Complaint, they may be considered in connection with this motion. *See* Federal Rule of Civil Procedure 10(c). *See also Venture Associates v. Zenith Data Systems,* 987 F.2d 429, 431–32 (7th Cir.1993). The court must accept the pleader's allegations of fact as true together with such reasonable inferences as may be drawn in its favor. *See Scheuer v. Rhodes,* 416 U.S. at 236, 94 S.Ct. at 1686.

### III. *PERSONAL JURISDICTION*

 As a threshold matter, the Defendants argue that the claims for money damages raised against Defendants Carol B. Hallett, Commissioner of the United States Customs Service, A. Mary Schiavo, Inspector General of the United States Department of Transportation, and Thomas C. Richards, Administrator of the Federal Aviation Administration, in their individual capacities should be dismissed because this court lacks jurisdiction over their persons.[3] *See* Federal Rule of Civil Procedure 12(b)(2). None of the three resides in the Eastern District of Wisconsin. Thus, in order for this court to assert personal jurisdiction over them, the Plaintiff has the burden[4] of establishing that they are amenable to process under the Wisconsin long-arm statute, Wis.Stat. § 801.05, and that the statutory exercise of jurisdiction comports with the Due Process Clause of the United States Constitution. *See* U.S. *Const.* amend V. *See also Dehmlow v. Austin Fireworks,* 963 F.2d 941, 945 (7th Cir.1992). The exercise of jurisdiction is constitutionally permissible if the Defendants have certain minimum contacts with Wisconsin such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Company v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The test is whether the Defendants "purposefully established 'minimum contacts' in the forum State." *World–Wide Volkswagon Corporation v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). It is foreseeability, and not physical presence, that is critical; the due process analysis entails a determination of whether the Defendants' conduct and connection with the forum state are such that the Defendants should reasonably anticipate being hauled into court there. *See Id.* at 297, 100 S.Ct. at 567. *See also Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.,* 906 F.2d 276, 283 (7th Cir.1990). The minimum contacts requirement is satisfied if there is some act by which the Defendants purposefully availed themselves of the privilege of conducting activities within Wisconsin. *See FMC Corporation v. Varonos,* 892 F.2d 1308, 1313 (7th Cir.1990).

 In arguing for dismissal, the Defendants point out that the Amended Complaint contains no allegations that Hallett, Schiavo or Richards were directly or personally involved in obtaining or executing the search warrant at issue or in the alleged misuse of the business records seized. There is also no allegation that any of the three were ever physically present in Wisconsin. Thus, the Defendants conclude that Hallett, Schiavo and Richards do not have sufficient contacts with Wisconsin to be sued here in their personal capacities.

Wag–Aero, in turn, argues that: "the three supervising individuals either directly authorized or were recklessly indifferent to their subordinate's misconduct. This supervisory indifference or tacit authorization provides the necessary link with Wisconsin to satisfy the constitutional requirement of minimum contacts." Wag–Aero's Memorandum in Opposition to Defendant's Motion to Dismiss at 25. In its brief, Wag–Aero claims that the named supervisors failed to train agents, failed to supervise them, and failed to re-

---

**3.** All the parties agree that this court can exercise jurisdiction over all of the individual Defendants in their official capacities. Thus, the Defendants' challenge to personal jurisdiction does not apply to any of the claims for injunctive or declaratory relief. However, the Defendants note that Thomas C. Richards did not become the Administrator of the Federal Aviation Administration until late June of 1992, after the search of the premises of Wag–Aero was completed. *See* Memorandum of Law in Support of the Motion of Defendants to Dismiss at 14 n. 4.

**4.** *See Overton v. United States,* 925 F.2d 1282, 1283 (10th Cir.1991).

strain them after receiving actual notice of their unconstitutional activities. However, the Amended Complaint does not contain these allegations or any facts showing personal involvement by Hallett, Schiavo or Richards. The Plaintiff cannot be allowed to add claims or facts in its brief. *See Gomez v. Illinois State Board of Education,* 811 F.2d 1030, 1039 (7th Cir.1987). Thus, the only forum contact that has been properly pleaded is that the three Defendants were ultimate supervisors of federal agents operating in Wisconsin.

When federal agency heads are not alleged to have been directly and actively involved in activities in the forum state, many courts have refused to exercise personal jurisdiction over them. *See e.g., Cameron v. Thornburgh,* 983 F.2d 253, 257 (D.C.Cir.1993); *Green v. McCall,* 710 F.2d 29, 32–34 (2d Cir.1983); *Barry v. Whalen,* 796 F.Supp. 885, 889–90 (E.D.Va.1992). Nevertheless, the Plaintiff in the instant case relies upon seemingly contrary language in *Green v. Carlson,* 581 F.2d 669, 675 (7th Cir.1978), *aff'd,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), where the estate of a federal prisoner sought damages for the wrongful death of the deceased prisoner. The Plaintiff alleged that the federal officers caused the death by depriving the prisoner of his constitutional rights to due process and equal protection and to be free from cruel and unusual punishment. After the district court dismissed the complaint for lack of subject matter jurisdiction, the issue before the Seventh Circuit was whether the Director of the Federal Bureau of Prisons and the Assistant Surgeon General of the United States, who were being sued in their individual capacities, had been personally served by a summons as required by Federal Rule of Civil Procedure 4(d)(1). After ruling that the two defendants had been properly served in their personal capacities, the court went on to state that:

> Both defendants had contacts with Indiana sufficient ... to meet the requirements of due process. Carlson, as Director of the Federal Bureau of Prisons, is responsible for the management of the federal prison system. Brutshe, as Assistant Surgeon General of the United States, is responsi-

ble for monitoring the medical services at the Terre Haute prison.

*Id.* at 676.

This court questions whether the Seventh Circuit would still follow the dicta in *Green* in light of the United States Supreme Court's opinion two years later in *Stafford v. Briggs,* 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980). In *Stafford,* various federal officials who were being sued for money damages in states in which the officials had not been present and did not reside sought to have the claims against them dismissed on the grounds that the courts lacked personal jurisdiction over them and that venue was improper. The Court ruled that, while section 2 of the Mandamus and Venue Act of 1962, 28 U.S.C. § 1391(e), allows actions for injunctive relief to be brought against federal supervisors in any district, the nationwide venue provision does not apply to claims for money damages brought against officials in their personal capacities. *See Stafford,* 444 U.S. at 533–45, 100 S.Ct. at 779–85. Therefore, venue for a civil action brought against federal officials in their personal capacities is proper only where the claim arose or where all the defendants reside. *See* 28 U.S.C. § 1391(b).

In arriving at this ruling on the venue statute, the Supreme Court indicated that the mere fact that federal government officials enforce federal laws and policies or supervise personnel and personnel training on a nationwide basis is not sufficient in and of itself to confer personal jurisdiction in a lawsuit which seeks money damages against those same governmental officials in their individual capacities. The Court explained that:

> The conditions and venue provisions under which officers of the United States may be sued, while in office or after leaving office, have serious implications for defendants as well as for those seeking relief. An officer of the Government while so employed may have numerous mandamus-type suits naming him or her as a party. Without doubt, under § 1391(e), venue lies in every one of the 95 federal districts, and suits may be pending in a dozen or several dozen at any one time. Even though the burden of

defending multiple suits while in office may be onerous, the United States Attorney in each of the districts and the Department of Justice carry that burden. In a mandamus suit only rarely would the officer himself be obliged to travel to the district in which the case was heard; if so obliged, the travel would be at Government expense. When an official leaves office, his personal involvement in a mandamus suit effectively ends and his successor carries on. No personal cost or inconvenience is incurred, either while in office or later. It was with this understanding that Congress sought to ameliorate the inconvenience and expense to private plaintiffs seeking relief from the action or inaction of their Government. H.R.Rep. No. 536, at 3; S.Rep. No. 1992 at 3.

Suits for money damages for which an individual office-holder may be found personally liable are quite different. If § 1391(e) were construed to govern actions for money damages against federal officers individually, suits could be brought against these federal officers while in Government service—and could be pressed even after the official has left federal service—in any one of the 95 federal districts covering the 50 states and other areas within federal jurisdiction. This would place federal officers, solely by reason of their Government service, in a very different posture in personal damages suits from that of all other persons, since under 28 U.S.C. § 1391(b), suits against private persons for money damages must be brought "in the judicial district where all defendants reside, or in which the claim arose."

There is, however, no indication that a Congress concerned with "the sound and equitable administration of justice," H.R.Rep. No. 536, at 3; S.Rep. No. 1992, at 3, intended to impose on those serving their Government the burden of defending personal damages actions in a variety of distant districts.... Absent a clear indication that Congress intended such a sweeping effect, we will not infer such a purpose nor will we interpret a statute to effect that result. "We think these laws ought to be construed in the spirit in which they were made—that is, as founded in justice—and should not be strained by technical constructions to reach cases which Congress evidently could not have contemplated, without departing from the principle upon which they were legislating, and going far beyond the object they intended to accomplish." *Brown v. Duchesne,* [60 U.S. 183] 19 How. [183] 197 [15 L.Ed. 595 (1900).]

*Stafford,* 444 U.S. at 543–45, 100 S.Ct. at 184–85 (footnote omitted).

This language indicates that, in order to exercise personal jurisdiction, a federal court must find that a federal defendant sued in his or her personal capacity has minimum contacts with the forum. If a federal agency head could be sued personally in any district within his or her official authority merely for supervising acts of subordinates as suggested by the dicta in *Green,* the minimum contacts requirement would be rendered meaningless. *See Vu v. Meese,* 755 F.Supp. 1375, 1378 (E.D.La.1991) (criticizing *Green* ).

In the instant case, Wag–Aero has larded its Amended Complaint with legalese attempting to establish that Hallett, Schiavo and Richards acted or failed to act in some manner which caused the Plaintiff's alleged injury in Wisconsin. Nevertheless, the Plaintiff has failed to support its legal conclusions with allegations of any specific acts or failures to act undertaken by these three Defendants in their personal capacities which establish minimum contacts with Wisconsin. In addition, the Plaintiff has pointed to no specific provision of the Wisconsin long-arm statute under which these Defendants would be amenable to service of process. Consequently, the Plaintiff has failed to meet its burden of establishing that this court has personal jurisdiction over Defendants Hallett, Schiavo and Richards and the claims against them in their individual capacities will be dismissed.[5] *See* Federal Rule of Civil Procedure 12(b)(2).

---

5. As explained in Part V below, the claims for money damages against these three Defendants in their personal capacities would also fail because, as a matter of substantive law, liability for a civil rights violation can only be imposed upon an individual who personally caused the harm

## IV. RETURN OF PROPERTY

As its first cause of action, Wag–Aero has moved pursuant to Federal Rule of Criminal Procedure 41(e) [6] for a return of its property and for an order suppressing the items seized as evidence in any future hearing or trial. After the Defendants filed their motion to dismiss, the court held a hearing on the Plaintiff's request for return of its property. The court entered no findings of fact or conclusions of law, but the parties agreed among themselves that all property seized would be returned to the Plaintiff on the condition that the return would have no preclusive effect on any other proceeding.

The government now argues that the Plaintiff's claim under Rule 41 is moot, but the Plaintiff still wants all copies of the seized documents returned and a suppression order. While this court has jurisdiction to consider a motion for the return of property filed by a claimant prior to indictment,[7] the government points out that Rule 41 no longer provides for issuing a preindictment suppression order. *See* Federal Rule of Criminal Procedure 41 at Advisory Committee Notes, 1989 Amendment. *See also In re Search of Kitty's East,* 905 F.2d 1367, 1370 (10th Cir. 1990). Therefore, the request to suppress evidence should be denied.

The court believes that the parties' settlement forecloses the Plaintiff from seeking additional relief under Rule 41(e). The court was led to believe that the return of the seized property would settle Wag–Aero's Rule 41 claim. Even if the remedy of suppression is still available under Rule 41, no indictment is pending, so the issue is not yet ripe. *See Vonder AHE v. Howland,* 508 F.2d 364, 371 (9th Cir.1974). *See also United-* ed States v. Burzynski Cancer Research Institute, 819 F.2d 1301, 1312 (5th Cir.1987), cert. denied sub nom. Wolin v. United States, 484 U.S. 1065, 108 S.Ct. 1026, 98 L.Ed.2d 990 (1988). Accordingly, the court will not consider granting further relief on Wag–Aero's Rule 41 claim and this claim will be dismissed.

## V. BIVENS CLAIMS

### A. USE OF BUSINESS RECORDS SEIZED

As its second cause of action, Wag–Aero claims that after its records were confiscated, the United States Department of Transportation's Federal Aviation Administration (FAA), along with the Defendants, used Wag–Aero's customer list to send those customers a circular seeking information concerning goods sold to the customers by Wag–Aero. The circular stated that the FAA was conducting an air worthiness review. The Plaintiff charges that:

> Defendants' representation that the FAA was conducting an "airworthiness review" was not only false and misleading, but was also knowingly or recklessly calculated to disrupt and interfere with Wag–Aero's business reputation with its customers, to frighten Wag–Aero's customers, and to deter them from doing business with Wag–Aero in the future.

> In particular, the questions on the Circular are designed to mislead the customers into incorrectly believing (a) that there is a problem with the parts that were purchased from Wag–Aero; (b) that the parts somehow required FAA approval but do

and the law recognizes no *respondent superior* liability for civil rights violations. *See Abate v. Southern Pacific Transportation Company,* 993 F.2d 107, 110–11 (5th Cir.1993).

**6.** Federal Rule of Criminal Procedure 41(e) provides that:

**Motion for Return of Property.** A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. The court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be returned to the movant, although reasonable conditions may be imposed to protect access and use of the property in subsequent proceedings. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.

**7.** *See, e.g. In re Warrant Dated December 14, 1990,* 961 F.2d 1241 (6th Cir.1992); *In re Search of 4330 North 35th Street, Milwaukee, Wisconsin,* 142 F.R.D. 161 (E.D.Wis.1992).

not have it; (c) that the parts somehow required TSO [technical standard order] but did not have it; or (d) that the parts somehow required PMA [part manufacturing authority] but did not have it; or (e) that Wag–Aero somehow misrepresented the FAA approval, or TSO or PMA status of the parts it sold.

Plaintiff's First Amended Complaint at ¶¶ 38 & 39. Wag–Aero says that the effect of this circular was to give its customers the impression that the parts it sold to them were not airworthy. As a result, Wag–Aero claims that "many" customers expressed concern and thought about returning parts and that many customers "indicated an intention to discontinue their business relationship with Wag–Aero." Plaintiff's First Amended Complaint at ¶¶ 42 & 43. There are no allegations that any customer actually returned parts or stopped doing business with the Plaintiff.

Based upon these allegations, Wag–Aero concludes that:

> ... defendants have violated Wag–Aero's constitutional rights by depriving it of its property interest in its goodwill, its ongoing business enterprise, including the profits derived therefrom, and its business relationships with its customers, without due process of law.

Plaintiff's First Amended Complaint at ¶ 46. The Plaintiff seeks injunctive and declaratory relief as well as money damages for these alleged constitutional deprivations.

### 1. Nature of Bivens Remedy

Although Wag–Aero does not provide any statutory or case law authority for bringing this claim, monetary relief for a constitutional violation can only be had from federal officials in a *Bivens* action. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In *Bivens*, the Supreme Court held that a plaintiff could recover money damages [8] for Fourth Amendment violations committed by federal agents. Subsequently, courts expanded the *Bivens* remedy to include other constitutional provisions. In *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), this right was extended to actions arising under the Due Process Clause of the Fifth Amendment. Thus, Wag–Aero's claim that it was deprived of a property interest without due process fits within the already-established parameters of a *Bivens* action.

A *Bivens* action can be maintained against a defendant only in his or her individual capacity. *See Johnston v. Horne*, 875 F.2d 1415, 1424 (9th Cir.1989). Consequently, Wag–Aero cannot maintain its claims for damages against the United States of America [9] or against Defendants Hallett, Schiavo and Richards over whom the court does not have personal jurisdiction.[10] *See* Part III,

---

**8.** In this case the Plaintiff is also asking for injunctive relief to remedy the alleged constitutional violations. A federal court can award injunctive relief for a continuing constitutional violation under its general remedial powers. However, where, as here, the court concludes that there has been no constitutional violations, no relief of any kind will be awarded. *See Al–Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir. 1991). Consequently, Wag–Aero's claims for declaratory and injunctive relief sought for violations of its rights under the Fourth and Fifth Amendments will be dismissed.

**9.** *See Mack v. United States*, 814 F.2d 120, 123 (2d Cir.1987) (*Bivens* action does not lie against United States).

**10.** In addition to lack of personal jurisdiction being a bar to the Plaintiff's maintenance of its claims against Defendants Hallett, Schiavo and Richards in their personal capacities, the civil rights claims lodged against these Defendants also fail because the Plaintiff is trying to hold them liable on a *respondeat superior* theory of liability.

A corollary to the requirement that *Bivens* defendants have a direct and personal responsibility is the rule that a *Bivens* claim may not be premised upon a *respondeat superior* theory. *See Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981); *Abate v. Southern Pacific Transportation Company*, 993 F.2d 107, 110–11 (5th Cir.1993); *Beard v. Mitchell*, 604 F.2d 485, 487–88 (7th Cir.1979). In this case the Plaintiff alleges that the search warrant was issued under the "supervision and direction" of the Commissioner of the United States Customs Service, the Inspector General of the United States Department of Transportation, and the Administrator of the Federal Aviation Administration. Wag–Aero also alleges that under the direction of these three Defendants the records seized were misused to disseminate false information about the company with the intention of

above. As for Defendants Becker and Gryniewicz, the Amended Complaint says that the Federal Aviation Association prepared and disseminated the offending circular, but it does not allege that any of the named Defendants personally took part. For a defendant to be held liable to the Plaintiff under a *Bivens* theory, the Defendant must have had direct and personal responsibility for the conduct of which the Defendant complains. *See Tallman v. Reagan,* 846 F.2d 494, 495 (8th Cir.1988). *See also Moore v. Indiana,* 999 F.2d 1125 (7th Cir.1993). Wag–Aero's allegations are insufficient to make this showing regarding Defendants Becker and Gryniewicz on Wag–Aero's claim involving the use of its business records.

2. *Qualified Immunity*

Even if any of the named Defendants are properly before this court, the Defendants argue that Wag–Aero should not be allowed to proceed on its due process claim because they are entitled to qualified immunity in their personal capacities. The Seventh Circuit has explained the qualified immunity defense as follows:

> Government officers performing discretionary functions are shielded from civil liability unless their actions violate clearly established statutory or constitutional rights of which a reasonable officer would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This immunity protects all but "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). Reasonable mistakes are permitted without personal liability resulting. *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987); *Malley,* 475 U.S. at 343, 106 S.Ct. at 1097. The purpose of this immunity is to allow officers to do their public business without

the burden and distraction of possible lawsuits and to allow officers to reasonably anticipate when their conduct could give rise to civil liability. *Anderson,* 483 U.S. at 646, 107 S.Ct. at 3042; *Harlow,* 457 U.S. at 814, 102 S.Ct. at 2736.

A clearly established right is one that is established in a particularized sense rather than a general one like the Fourth Amendment's right to be secure against unreasonable searches. *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039; *Schertz v. Waupaca Co.,* 875 F.2d 578, 583 (7th Cir.1989). It is an objective fact-specific question which depends upon the clearly established law at the time. *Mitchell v. Forsyth,* 472 U.S. 511, 535, 105 S.Ct. 2806, 2820, 86 L.Ed.2d 411 (1985). While the identical factual scenario may not already have been legally decided, an officer's action must be considered in light of the particular circumstances he or she faced. *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039–40; *Malley,* 475 U.S. at 345, 106 S.Ct. at 1098; *Mitchell,* 472 U.S. at 535 n. 12, 105 S.Ct. at 2820 n. 12. "Once the defendant's actions are defined or characterized according to the specific facts of the case this characterization is compared to the body of law existing at the time of the alleged violation to determine if constitutional, statutory, or case law shows that the now specifically defined actions violated the clearly established law." *Rakovich v. Wade,* 850 F.2d 1180, 1209 (7th Cir.) (en banc), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988).

A right is not clearly established if officers of reasonable competence could disagree on the issue. *Malley,* 475 U.S. at 341, 106 S.Ct. at 1096. Immunity is intended to protect officers from any objectively reasonable decisions, including those that are wrong. *Id.* at 345, 106 S.Ct. at 1098.

. . . .

destroying its goodwill and business reputation. The Plaintiff speculates that the supervisors' failure to train or to stop the agents might have caused the alleged harm, but the Amended Complaint contains no allegation of any specific actions or inactions of these three Defendants which directly caused the alleged violations of

Wag–Aero's constitutional rights. Without such allegations these supervisors cannot be held liable for the alleged wrongs of their subordinates. *See generally Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

Because immunity is designed to protect officers from suit, the Supreme Court has often indicated that the question of immunity should be resolved at the early stages of a lawsuit as much as possible. *Anderson,* 483 U.S. at 646 n. 6, 107 S.Ct. at 3042 n. 6; *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815–16; *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. "*Harlow* thus recognized an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law ... [I]t is effectively lost if a case is erroneously permitted to go to trial." *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815. The issue of qualified immunity is one for the court and not the jury to decide. *Rakovich,* 850 F.2d at 1202; *Llaguno v. Mingey,* 763 F.2d 1560, 1569 (7th Cir.1985) (en banc).

*Hinnen v. Kelly,* 992 F.2d 140, 142–43 (7th Cir.1993). The availability of immunity depends not on an officer's subjective good faith but rather on an objective reasonableness standard. *See Harlow,* 457 U.S. at 819, 102 S.Ct. at 2738–39.

▮▮▮▮ The United States Supreme Court has pointed out that: "A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley,* 500 U.S. 226, ——, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). In *Siegert v. Gilley,* the Supreme Court sanctioned a methodology under which the qualified immunity analysis need not be completed if it can be determined at the outset that the "right" the

plaintiff identifies is not protected by the United States Constitution. In *Siegert,* the Court concluded that a former government employee had not stated a claim for the deprivation of a liberty interest in his reputation because the constitution does not protect an interest in reputation. *See Id.* 500 U.S. at —— – ——, 111 S.Ct. at 1793–94. Relying on *Paul v. Davis,*[11] 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), and its progeny, the court rejected Siegert's due process claim even though the plaintiff alleged that the defendant acted with "malice" and even though the plaintiff alleged that he had suffered special damages. *See* 500 U.S. at —— – ——, 111 S.Ct. at 1793–94.

In *Goulding v. Feinglass,* 811 F.2d 1099 (7th Cir.), *cert. denied.* 482 U.S. 929, 107 S.Ct. 3215, 96 L.Ed.2d 701 (1987), the Seventh Circuit applied the holding of *Paul v. Davis* to a property interest due process claim similar to that of Wag–Aero. The case involved a claim by Plaintiff Randall S. Goulding that Defendants Irving Feinglass, Irwin Solomon and Thomas Dietz as employees of the Internal Revenue Service had violated his constitutional rights by conspiring to destroy his practice as a lawyer. *See Id.* at 1100. The district court granted summary judgment in favor of the government employees. On appeal, Goulding asserted that the Defendants had deprived him of protected property and liberty interests in violation of his Fifth Amendment right to due process. Specifically, the Plaintiff argued that he lost protected property rights because the Defendants' alleged actions (including harassment, threats and slanderous and defamatory remarks) caused him to lose clients and virtually ruined the value of his law practice. *See Id.* at 1102.

11. In *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the photograph of a person who had been arrested for, but not convicted of, shoplifting was circulated by the Louisville police in a flyer distributed to area businesses. The person, who had been identified in the flyer as an active shoplifter, sued the chief of police and others claiming that his reputation had been injured and that he had been denied due process. In rejecting this claim, the Supreme Court said that its prior line of cases "does not establish the proposition that reputation alone, apart from some more tangible interests such as employ-

ment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id.* at 701, 96 S.Ct. at 1160–61. The Court explained that the Constitution only protects a right or status previously recognized by law which a government actor has "distinctly altered or extinguished." *Id.* at 711, 96 S.Ct. at 1165. As a result, the Court held that "the interest in reputation, asserted in this case is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law." *Id.* at 712, 96 S.Ct. at 1166.

In affirming the district court, the Seventh Circuit ruled that Goulding had no constitutionally protected property right in his reputation or business. *See Id.* at 1102. The court explained that, under *Paul v. Davis*, a Plaintiff's legal rights or status must have been removed or significantly altered in order to maintain a constitutional claim involving reputation. *See Id.* at 1102–03. A loss of clients and business does not meet this standard.

In the instant case Wag–Aero, like the unsuccessful plaintiffs in *Paul v. Davis, Siegert v. Gilley* and *Goulding v. Feinglass,* is claiming that it was deprived of a property interest in its reputation and business which is protected by the Due Process Clause. Specifically, the Plaintiff alleges that:

> By reason of the aforesaid false and misleading representations, defendants have violated Wag–Aero's constitutional rights by depriving it of its property interest in its goodwill, its ongoing business enterprise, including the profits derived therefrom, and its business relationships with its customers, without due process of law.

Plaintiff's First Amended Complaint at ¶ 46. As explained above, it is well- and long-established that such allegations do not state a claim under the Due Process Clause, even though the Plaintiff claims to have suffered economic harm and even though the Plaintiff alleges that the Defendants acted intentionally and recklessly. *See Siegert v. Gilley*, 500 U.S. at ——, 111 S.Ct. at 1794 ("Our decision in *Paul v. Davis* did not turn ... on the state of mind of the defendant, but on the lack of any constitutional protection for the interest in reputation."). Based on this well-settled precedent, this court will dismiss the Plaintiff's second cause of action on the ground that the Plaintiff has failed to allege a violation of a constitutional right.

**B. SEARCH AND SEIZURE**

*1. Probable Cause*

Wag–Aero's fourth cause of action is also predicated upon a *Bivens* theory. The company claims that its Fourth and Fifth Amendment rights to be free from unlawful searches and seizures were violated because Special Agent Becker's affidavit supporting his application for a search warrant contained "numerous false and misleading statements made with deliberate or reckless disregard of the truth and of the constitutional rights of Wag–Aero." Plaintiff's First Amended Complaint at ¶ 13.

When challenged by the Defendants to point out the offending section of the affidavit, Wag–Aero explained that:

> ... the binding rulings of the United States Customs Service are directly contrary to the Search Warrant Affidavit submitted by defendants in support of the application for the search warrant, inter alia, in that Mr. Becker asserts therein that "with these commodities, there is no other discernable reason to claim duty-free status except to assert the parts were FAA approved." Given Mr. Becker's position as a Customs Special Agent, as well as the positions of the other defendants as government officers presumably familiar with federal customs regulations, this assertion was either deliberately false or was made with a reckless disregard of the truth.

Plaintiff's First Amended Complaint at ¶ 21.[12]

Wag–Aero takes the position that this affidavit allegation is false because FAA approval in a manner recognized by the Customs Service is not the only basis for claiming duty free classification when importing civil aircraft parts. The company also believes that there are ways of obtaining FAA approval which are not mentioned in Becker's

---

**12.** Aside from this paragraph, Wag–Aero attempts to suggest that Becker's affidavit contained other falsehoods which are not "specifically pled" in its Amended Complaint. However, unpleaded allegations cannot be considered in connection with this motion to dismiss. *See Gomez v. Illinois State Board of Education*, 811 F.2d 1030, 1039 (7th Cir.1987). In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) the Supreme Court said that the "challenger's attack on a warrant must be more than conclusory." *Id.* at 171, 98 S.Ct. at 2684. "There must be allegations of deliberate falsehood or of reckless disregard for the truth.... [The allegations] should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting· reasons." *Id.*

affidavit. Wag–Aero maintains that: "If defendant Becker had instead truthfully asserted that 'with regard to these commodities there are many other discernable reasons to claim duty-free status,' no warrant would have been issued."[13] Plaintiff's Memorandum in Response to Defendants' Motion for a Stay of All Discovery at 6.

The Plaintiff also argues that claiming duty-free status for some of the items was justified because, after the search was concluded, it sought and received "binding rulings" from the Customs Service that no duty was owed or that sufficient duty had been paid on some of the items seized.[14] Wag–Aero admits that the Customs Service ruled that two categories of aircraft equipment, "eyebrow lights" and items it calls "radios,"[15] were not duty free as the company had declared, but says that it continues to disagree with this ruling. See Plaintiff's First Amended Complaint at ¶ 23.

Wag–Aero argues that Special Agent Becker included the "false" statement in his affidavit knowingly and intentionally or with reckless disregard for the truth and that the false statement was necessary to the finding of probable cause by the Magistrate Judge. Therefore, the Plaintiff concludes that the Defendants executed an invalid warrant thereby violating its Fourth and Fifth Amendment rights to be free from unlawful searches and seizures. See Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

The Defendants maintain that this claim should be dismissed because no constitutional rights of Wag–Aero were violated by the search and seizure in that the portion of the Becker affidavit which Wag–Aero claims to be false was not necessary for a finding of probable cause. In Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court ruled that if statements identified as false are not material or necessary to a finding of probable cause, a warrant is valid. See Id. at 155–56, 98 S.Ct. at 2676–77. See also Perlman v. City of Chicago, 801 F.2d 262, 264–65 (7th Cir.1986) (adopting Franks test for civil lawsuits), cert. denied, 480 U.S. 906, 107 S.Ct. 1349, 94 L.Ed.2d 520 (1987). "Even deliberately inaccurate representations do not invalidate a warrant if the truthful statements establish probable cause." United States v. Ferra, 948 F.2d 352, 353 (7th Cir.1991), cert. denied, —— U.S. ——, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992).

"[W]here a search warrant is challenged on the basis of alleged falsities contained in the affidavit, the appropriate procedure for the district court to follow is to review the affidavit without the challenged portions to determine whether the unchallenged portion by itself establishes probable cause for the warrant to issue." United States v. Muhammad, 928 F.2d 1461, 1464 (7th Cir.1991).

The Seventh Circuit has explained that:

Probable cause is a fluid concept. United States v. McNeese, 901 F.2d 585, 592

---

**13.** Becker's affidavit does, in fact, set forth Wag–Aero's position that FAA "acceptance" of a part over time is tantamount to approval. See Plaintiff's First Amended Complaint at Exhibit B, ¶¶ 24–27.

**14.** Although Wag–Aero makes much of the fact that "binding rulings" it says it received after-the-fact from the Customs Service determined that it had paid or overpaid the duty due on a few of the items seized, 18 U.S.C. § 542, which sets forth the crime under investigation, imposes criminal penalties for importing merchandise by means of any false statement "whether or not the United States shall or may be deprived of any lawful duties."

In his affidavit Becker acknowledges that Wag–Aero paid duty on some of the aircraft parts it imported, but alleges that: "These duty-paid

entries of unapproved aircraft parts and accessories indicate to affiant that Wag–Aero is aware of customs requirements that aircraft parts must be FAA·approved to be eligible for duty-free treatment." Plaintiff's First Amended Complaint at Exhibit B, ¶ 36.

**15.** Although the Defendants cannot introduce any "facts" into the record on a motion to dismiss, they say they are prepared to prove that:

These transceivers, which plaintiff calls "radios" in its complaint and response memorandum, comprise over two-thirds of the value of the property seized in the June 10, 1992 search....

Defendants' Memorandum in Reply to Plaintiff's Response to Defendants' Motion to Dismiss at 10 n. 7.

(7th Cir.1990). It is to be determined from a totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "An affidavit has made a proper showing of probable cause when it sets forth facts sufficient to induce a reasonably prudent person to believe that a search ... will uncover evidence of a crime." *McNeese,* 901 F.2d at 592. We independently review the sufficiency of the search warrant affidavit, "recognizing that doubtful cases should be resolved in favor of upholding the warrant." *United States v. Malin,* 908 F.2d 163, 165 (7th Cir.), *cert. denied,* 498 U.S. 991, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990) (quoting *United States v. Rambis,* 686 F.2d 620, 622 (7th Cir. 1982).

*Muhammad,* 928 F.2d at 1465.

▉ Following this procedure, this court has examined the Becker affidavit, *see* Plaintiff's First Amended Complaint at Exhibit B, without the offending paragraph to determine whether a judicial officer would still have found probable cause to issue the warrant to search and seize Wag–Aero's property. In introducing his affidavit, Becker states his intention to show that a search of Wag–Aero's corporate offices would uncover evidence that the company had violated section 542 of Title 18 of the United States Code, which provides, in relevant part, that:

> Whoever enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance, or makes any false statement in any declaration without reasonable cause to believe the truth of such statement, or procures the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement, whether or not the United States shall or may be deprived of any lawful duties; or

> Whoever is guilty of any willful act or omission whereby the United States shall or may be deprived of any lawful duties accruing upon merchandise embraced or referred to in such invoice, declaration, affidavit, letter, paper, or statement, or affected by such act or omission—

> Shall be fined for each offense not more than $5,000 or imprisoned not more than two years, or both.

18 U.S.C. § 542.

The next eleven paragraphs of Becker's thirty-page, thirty-eight paragraph affidavit deal with information about the importation of transceivers (called "radios" by Wag–Aero) into the United States by the Plaintiff. Becker attests that he personally examined Customs records compiled between April 10, 1991 and May 12, 1992, and found that Wag–Aero imported 992 Japanese-made transceivers into this country during that period. He examined samples of these transceivers and found no indicia of FAA approval. FAA approval is significant Becker explains, because, under this country's trade treaty with Japan, merchandise imported from Japan is subject to a six percent import duty. However, another agreement permits duty-free entry of articles imported for use in civil aircraft if the importer files a written statement for each item or a "blanket statement" covering entire shipments attesting that the merchandise will be used in civil aircraft and that it has been approved by the FAA or an FAA-approved authority in the country of origin or that an application for approval has been submitted to the FAA. After describing the certification process and the forms used, Becker says that he examined the certifications and forms filled out by Wag–Aero and concluded that Wag–Aero falsely certified that the transceivers he had inspected were not subject to duty, even though they were not FAA approved.

Next, Becker lists evidence tending to show that Wag–Aero intentionally declared nonapproved parts to be duty free despite its knowledge of regulations to the contrary. Becker begins by explaining the role of a customhouse broker, such as M.E. Dey and Company utilized by Wag–Aero, which assists importers with filling out customs documents. Becker is sure that, although Wag–Aero may not have filled out the Customs documents, it would have received copies of

the certifications of duty-free status, and would have had an opportunity to make corrections, if, for example, it found that the duty free certification for the transceivers had been made through mistake or inadvertence.

In the remaining paragraphs of the affidavit, Becker alleges that, besides the transceivers, Wag–Aero imported other nonapproved aircraft parts manufactured in foreign countries and certified them as duty free. He relates that a customer, Gary Wells, purchased imported equipment from a Wag–Aero catalog under the impression that the parts were FAA approved. In a recorded telephone call to the company's headquarters, Wells was told that the parts were not approved. Therefore, Becker concludes that the company knew it was selling unapproved parts even though it had certified them as duty free.

Becker says that Wag–Aero demonstrated knowledge of FAA approval requirements during its prior dealings with the Department of Transportation (DOT). In 1990, the company had been investigated by the DOT's Office of Inspector General and had been advised that certain of its civil aircraft parts needed FAA approval. Wag–Aero subsequently obtained this approval, thereby evidencing knowledge of the approval process.

Becker was able to examine correspondence between Wag–Aero and the FAA regarding the shipment of transceivers in May of 1992, and learned from the correspondence that the FAA had taken the position that the transceivers Wag–Aero was importing should not be included in the blanket certification because the company had not sought approval for the parts domestically or in Japan. Despite the FAA's refusal to accept Wag–Aero's position that the transceivers did not require FAA approval or its equivalent to be certified as duty free, Becker says that in May of 1992, Wag–Aero claimed duty-free status for a shipment of 250 transceivers.

In conclusion, Becker suggests a motive for Wag–Aero's actions. He says that he learned from Wag–Aero's catalogs and other sources that the company sells parts for home-built aircraft by mail order. Parts for home-built aircraft need not be FAA approved, but the parts cannot be imported duty free. Thus, Wag–Aero's conduct raises the inference that it is importing parts without FAA approval duty free in violation of the law, then selling them to amateur airplane builders.

The foregoing allegations do not include the paragraph which Wag–Aero claims is false. That allegation,[16] when viewed in con-

---

**16.** The allegation is contained in a section of the affidavit entitled "Processing by Customs Import Specialist." In the subparagraph containing the offending language, the affiant alleges that:

 d. On some certificates, WAG–AERO checked the box indicating the imported parts had been approved by FAA. On other certificates, WAG–AERO failed to check a box, instead relying upon the included statement: "This is a *blanket* certification." These "blanket" certifications were accepted to indicate WAG–AERO was representing the parts as FAA approved based upon the following:

 1. WAG–AERO claimed a "FREE" rate of duty in block #34 of each entry summary. The rate of duty, as specified in the HTSUS, must be entered in this block. Under these circumstances and with these commodities, there is no other discernable reason to claim duty-free status except to assert the parts were FAA approved.

 2. WAG–AERO utilized photocopies of three certificates, dated May 21, 1984 [signed by JANEL R. IVERSON Bookkeeper]; July 25, 1990 [signed by ROGER BASTERASH, Gener-

al Manager]; and October 30, 1991 [signed by ROBERTA L. WAGNER, Secretary/Treasurer and spouse of RICHARD H. WAGNER, President] for all duty-free entries. All three certificates were identical except the 1984 version had block 2a checked. The other two did not. Inclusion of the statement [marked with an "X"]: "This is a *blanket* certification applicable to all importations of the items listed. This form may be duplicated by M.E. DEY & CO, INC." in all three versions of the certificate and the inconsistent pattern in which these certificates were submitted to Customs indicate that all three versions were used, apparently at random, to satisfy the customs administrative requirement to obtain duty-free treatment.

 3. The terms "FAA" and "approved" appeared in all possible options on the certificate, with the only difference being the manner in which such FAA approval was obtained. Each option was sufficient to trigger duty-free status. Customs' interest and sole purpose of the form was to ensure only those parts specifically approved by FAA were granted duty-free status. The sole purpose for submitting this certificate

text, is not the first-hand statement of Defendant Becker, but an opinion a tributed to Jack Wallgren, a customs import specialist who has been responsible for processing the entries of aircraft parts being imported by Wag–Aero through Duluth, Minnesota.[17] Wallgren's summarized statements, explain the processing of Wag–Aero's imported aircraft parts at the point of entry. He describes the importer's certifications submitted by Wag–Aero and points out that the truthfulness of the certification is important because the Customs Service operates in large part on the honor system. Wallgren then renders the offending opinion that the only basis upon which Wag–Aero would certify the imported aircraft parts as being duty free was that they were FAA approved or the equivalent. Although it vehemently disagrees with this opinion, Wag–Aero has not challenged Wallgren's credentials as an expert and has not named him as a defendant. Moreover, the Plaintiff has offered no authority to support the proposition that an agent offering an expert's opinion in support of an application for a search warrant must exclude all hypotheses of innocence.

It is clear from this review of Becker's affidavit that the expert's opinion was by no means the sole basis or even the linchpin for a finding of probable cause by Magistrate Judge Bittner. Assuming, as the court must for purposes of resolving this motion, that the Wallgren opinion was false and that Becker knowingly and intentionally, or at least recklessly, included the opinion in his

affidavit anyway, the court finds that the remaining allegations provide a substantial basis for concluding that, under the relevant circumstances, probable cause to search Wag–Aero's headquarters and to seize its inventory and records existed when Magistrate Judge Bittner issued the warrant. *See United States v. McNeese,* 901 F.2d 585, 593 (7th Cir.1991).

On its face, the expurgated affidavit contains ample facts to support a finding that evidence of wrongdoing would be found on Wag–Aero's premises. As explained above, these facts include: Special Agent Becker's first-hand inspection of commercial invoices, aircraft parts and importation certificates; his own review of the legal obligations imposed upon importers; his rendition of the role and customary habits of customs brokers and their typical relations with importing clients; and the information Becker gathered from a Wag–Aero customer about the company's sale of unapproved aircraft parts. Because the crime of importing commercial goods by means of false statements has a scienter requirement, Becker also offers the results of his investigation into several ways Wag–Aero evinced knowledge and intent, including the fact of the prior investigation and Wag–Aero's unsuccessful quarrel with the Department of Transportation over the classification of the transceivers. With regard to these transceivers, Becker's first-hand observations revealed that Wag–Aero certified them as being duty free even though they did

---

to Customs is to claim duty-free treatment for FAA approved parts.

4. The final sentence of the certificates submitted by WAG–AERO states:

"Enter approved part numbers and description or copy of approval letter(s)" [emphasis added].

5. In each certificate submitted by WAG–AERO, part numbers, descriptions, and/or quantities were entered in compliance with the above sentence, indicating WAG–AERO was representing the imported parts as having been FAA "approved."

6. It is the practice of the Milwaukee customs district to not compel the production of documents demonstrating FAA approval at the time of entry.

7. Customs possesses sufficient personnel resources to fully examine only a small percentage of the entries each year. Customs must therefore rely upon the importer to sub-

mit truthful and accurate data. With respect to the aircraft part certifications, importers need only represent merchandise as having been approved by FAA. Absent unusual circumstances, as was the case with WAG–AERO, these representations are relied upon by Customs without further investigation or production of supporting documentation by the importer.

Plaintiff's First Amended Complaint at Exhibit B, ¶ 11(a)-(d).

17. Lest the Plaintiff should later contend that the offending paragraph fatally infects the entire Wallgren statement with falsity, the court has not considered any of the Wallgren statements in determining whether probable cause can be found without the allegedly false statements. *See* Plaintiff's First Amended Complaint at Exhibit B, ¶ 11.

not have FAA approval or its equivalent and even though the Department of Transportation had informed Wag–Aero that they were subject to duty. The Plaintiff concedes in its Amended Complaint that, after the search and seizure of the transceivers, the Customs Service continued to adhere to the position that these items should not have been imported duty free.

In short, the detailed and comprehensive facts contained in Becker's affidavit (minus the offending section) and the reasonable inferences that can be drawn from them would provide a judicial officer with an ample basis to conclude that there was probable cause to believe that evidence of violations of section 542 of Title 18 of the United States Code could be found at the Wag–Aero offices. Therefore, the warrant must be upheld. *See United States v. Spears,* 965 F.2d 262, 289–70 (7th Cir.) (issuing magistrate's probable cause determination must be upheld unless clearly erroneous), *cert. denied,* —— U.S. ——, 113 S.Ct. 502, 121 L.Ed.2d 438 (1992). So, because Wag–Aero's Amended Complaint with its attached exhibits does not state a claim upon which relief can be granted for violation of the Plaintiff's Fourth or Fifth Amendment rights, this prong of its *Bivens* claim will be dismissed. *See* Federal Rule of Civil Procedure 12(b)(6).

### 2. *Particularity*

In a related aspect of this claim, Wag–Aero complains that the warrant did not satisfy the Fourth Amendment's requirement of particularity,[18] thereby allowing the agents to conduct a general search. *See* Plaintiff's First Amended Complaint at ¶ 15. Having made this allegation, the Plaintiff has failed to develop an argument in law or fact which supports it.

■■■■■ Without any specific objection to address, the court has had to evaluate the Becker affidavit by general legal principles. The standard for constitutional particularity requires only that a warrant description be sufficiently specific to enable an agent exer-

cising rational judgment to select the items to be seized. *See United States v. Waugneux,* 683 F.2d 1343, 1348 (11th Cir.1982), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983). In this case the inventory and business records to be seized are described in the warrant application where the documents sought are grouped into broad categories of financial and transactional records. *See* Plaintiff's First Amended Complaint at Exhibit B, ¶¶ 38(a)-(n). But even though the warrant authorizes the seizure of many generic categories of business documents, it is tempered by a number of limiting features. The request is limited by reference to the criminal statute (18 U.S.C. § 542), by date ("since February 11, 1988"), and by subject matter ("related to the acquisition, importation, transportation, storage, maintenance, transfer and/or sale of ... aircraft parts identifiable as having been imported into the United States by Wag–Aero, Inc. from Taiwan and/or China"). The inventory is described by specific example, by catalog entry, and by part numbers:

The degree to which a warrant must state its terms with particularity varies inversely with the complexity of the criminal activity being investigated. *See Waugneux,* 683 F.2d at 1349. Thus, where, as here, uncovering the crime of submitting false statements to the customs service requires scrutiny of intricate financial records involving an ongoing course of conduct encompassing legal as well as illegal transactions, courts have regularly upheld warrants with broad terms. *See, e.g., United States v. Leary,* 846 F.2d 592, 601 n. 15 600 (10th Cir.1988).

These two factors—the presence of significant limiting criteria and the complexity of the transactions under investigation—lead the court to conclude that the warrant terms are sufficiently particular to pass constitutional muster. Courts have regularly upheld warrants authorizing searches and seizures of even broader categories of records. *See, e.g., United States v. Lamport,* 787 F.2d 474, 476 (10th Cir.) ("financial records"), *cert. de-*

---

18. General warrants are prohibited by the Fourth Amendment. In order to prevent law enforcement agents from conducting a general, exploratory rummaging, a warrant must give a particular description of the things to be seized. *See e.g., Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976).

*nied,* 479 U.S. 846, 107 S.Ct. 166, 93 L.Ed.2d 104 (1986). Therefore, this claim will be dismissed.

### 3. *Seizure*

■ Wag–Aero also complains that the agents seized business records which were not within the scope of the warrant. *See* Plaintiff's First Amended Complaint at ¶ 15. But although the Plaintiff has attached copies of the warrant application and the inventory of the property actually seized, *see Id.* at Exhibits B & C, it has not identified any particular item which was seized without authorization. The Plaintiff merely says that: "It is obvious from a glance at these two documents that defendants seized items that were either not described particularly or not encompassed at all in the warrant." Wag–Aero's Memorandum in Opposition to Defendants' Motion to Dismiss at 17. It may be "obvious" to the Plaintiff, but after examining the two documents, the court cannot determine that any item or category of items listed in the inventory of items seized is not sufficiently described and authorized by the search warrant.

Finally, Wag–Aero claims that Becker asked to seize some items which were not evidence of a crime and should not have been seized:

> With respect to other of the items seized, the binding rulings indicate that Wag–Aero paid either the appropriate duty, (e.g. runway light bulbs—4%) or in excess of the approved duty (e.g. galvanized cable—binding ruling 4% duty, Wag–Aero paid 4.4%; stainless steel cable—binding ruling 4.4% duty, Wag–Aero pad 4.9%). Mr. Becker's conclusory assertion that such items constitute evidence of a crime and should be seized was either deliberately false or was made with reckless disregard of the truth. Indeed, based on the binding rulings, Wag Aero may be entitled to a refund for over payment of duty.

Plaintiff's First Amended Complaint at ¶ 22.

As the Defendants point out, the inventory does not list any light bulbs, galvanized cable or steel cable as having been seized. Moreover, as noted above, whether or not duty was paid is not an element of the crime of submitting false statements to the Customs Service.

But even if the agents seized some items upon which no duty was owed, the search and seizure is not necessarily rendered infirm. The government may need the legal items to discover and show the illegal. An agent need not know to a certainty that each item seized has an association with criminal activity. As a matter of practicality, requiring the executing agents to separate evidence of legal transactions from evidence of illegal transactions would require the presence of numerous specially trained agents who would probably have been on the premises for weeks. Courts have not imposed such a burden upon agents seeking or executing warrants, especially where the items to be seized are not inherently criminal in nature. *See, e.g., United States v. Scharfman,* 448 F.2d 1352 (2d Cir.1971) (further particularization in the warrant not required where agents, seeking evidence of a hijacking, searched and seized thousands of fur garments, only some of which had been stolen), *cert. denied,* 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972).

Because Becker's inventory does not reveal that anything was seized without Magistrate Judge Bittner's authorization, this prong of Wag–Aero's *Bivens* claim will be dismissed.

## VI. *PAPERWORK REDUCTION ACT CLAIM*

■ The Plaintiff amended its original complaint to add a claim for declaratory and injunctive relief for the Defendants' alleged violation of the Paperwork Reduction Act of 1980, 44 U.S.C. §§ 3501–3520. Wag–Aero charges that the Defendants acted outside the scope of their authority when they attempted to collect information from ten or more persons by disseminating a circular without first obtaining the approval of the Office of Management and Budget (OMB) and without displaying a currently valid OMB control number and expiration date as

required by the Act.[19] As explained in Part V, above, the circular at issue is the questionnaire sent by the PAA to Wag–Aero's customers. *See* Plaintiff's First Amended Complaint at Exhibit D. The Plaintiff says that it is being irreparably harmed by this information gathering and asks the court to direct the Defendants to cease and desist from disseminating the circular.

In moving to dismiss this claim, the Defendants argue that federal regulations implementing the Paperwork Reduction Act clearly exempt the type of requests for information at issue here. Section 1320.3(c) of Title V of the Code of Federal Regulations provides that the Paperwork Reduction Act does not apply to collections of information that are undertaken:

> [D]uring the conduct of a Federal, criminal investigation or prosecution, during the disposition of a particular criminal matter, during the conduct of a civil action to which the United States or any official agency thereof is a party, or during the conduct of an administrative action or investigation involving an agency against specific individuals or entities. This exception applies during the entire course of the investigation or action, whether before or after formal charges or complaints are filed or formal administrative action is initiated, but only after a case file or its equivalent is opened with respect to a particular party....

5 C.F.R. § 1320.3(c).

According to the allegations of the Amended Complaint, the United States Department of Transportation distributed a circular to customers of Wag–Aero asking for information about aircraft parts purchased from the company. The Defendants point out that the questionnaire was and is "a component of the continuing criminal investigation of [Wag–Aero] by the United States Customs Service and the United States Department of Transportation." Memorandum of Law in Support of the Motion of the Defendants to Dismiss

at 34. Therefore, the Defendants believe that they are exempt from any obligation to obtain approval from the Office of Management and Budget for drafting or circulating it. Wag–Aero does not dispute the inference that a case file or its equivalent has been opened by the government. In its response, the Plaintiff merely asserts that: "By acting in a manner that violated the Constitution, defendants exceeded their official authority and are not protected by the exemption they cite." Wag–Aero's Memorandum in Opposition to Defendants' Motion to Dismiss at 23. The Plaintiff cites no statute, regulation or case which supports this novel theory.

The Seventh Circuit has explained that:

> The Paperwork Reduction Act of 1980, 44 U.S.C. §§ 3501 *et seq.* (1988) (the PRA or the Act), was enacted in response to a concern that in its tireless quest for information, the federal bureaucracy was imposing an ever-increasing burden on citizens and small businesses. The PRA requires federal agencies to submit all "information requests" to the Office of Management and Budget (the OMB) for approval. Information requests include "tax forms, medicare forms, financial loan applications, job applications, questionnaires, compliance reports, and tax or business records." *Dole v. United Steelworkers,* 494 U.S. 26, 33, 110 S.Ct. 929, 933, 108 L.Ed.2d 23 (1990). If the Director of the OMB approves the information request, the Act requires that he assign it a control number. An agency may not attempt to collect information unless it has obtained the Director's approval along with a control number to display on the information request. 44 U.S.C. § 3507. If an agency's information request does not display an OMB number, "no person shall be subject to any penalty for failing to maintain or provide information" to the agency pursuant to the request. 44 U.S.C. § 3512.

---

**19.** The Paperwork Reduction Act provides that: Notwithstanding any other provision of law, no person shall be subject to any penalty for failing to maintain or provide information to any agency if the information collection request involved was made after December 31,

1981, and does not display a current control number assigned by the Director, or fails to state that such request is not subject to this chapter.
44 U.S.C. § 3512.

*Salberg v. United States,* 969 F.2d 379, 383 (7th Cir.1992).

In this case, Wag–Aero is not a citizen or small business upon whom either paperwork or a penalty was imposed. The paperwork was imposed upon customers of Wag–Aero and they are not parties to this case. The Amended Complaint contains no allegations that Wag–Aero was directly injured as a result of the Defendants' alleged failure to comply with the Paperwork Reduction Act. Thus, the court concludes that Wag–Aero, which was not asked to provide information, does not have standing to maintain its claim under the Act.[20] *See Palmer v. City of Chicago,* 755 F.2d 560, 570–71 (7th Cir.1985) (in order to satisfy the jurisdictional prerequisite of standing, abstract injury is not enough; the plaintiff must show that it has sustained or is in immediate danger of some direct injury as a result of the challenged official conduct). Even if it did, the regulation cited by the Defendants clearly exempts the authors and distributors of the circular at issue from compliance with the Act. *See Lonsdale v. United States,* 919 F.2d 1440, 1444–45 (10th Cir.1990). Consequently, the court will dismiss Wag–Aero's claim for relief under the Paperwork Reduction Act.

## VII. *UNNAMED DEFENDANTS*

Because the court is dismissing all claims against the United States of America and the five named government employees in their personal and official capacities, the court will also dismiss Wag–Aero's claims against the "[c]ertain unknown federal agents in their official capacities." These unknown agents were never served with process or identified. Moreover, the legal conclusions made in this Decision as a basis for dismissing the claims raised would apply to the same claims raised against any federal defendant sued in his or her official capacity. *See Strauss v. City of Chicago,* 760 F.2d 765, 770 & n. 6 (7th Cir.1985).

## ORDER

Accordingly, the court ORDERS that the "Motion of the Defendants to Dismiss" (filed February 9, 1993) IS GRANTED. *See* Federal Rule of Civil Procedure 12(b)(1), (2) & (6).

IT IS FURTHER ORDERED that the "Motion of the Defendants for a Stay of All Discovery" (filed January 27, 1993) IS DENIED because it is moot.

IT IS FURTHER ORDERED that this action is dismissed upon its merits.

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 58, the Clerk of Court shall enter a final judgment as a separate document. This judgment shall provide that:

This action having come on for hearing before the Court, Honorable Thomas J. Curran, District Judge, presiding, and the issues having been duly heard and a decision having been duly rendered,

IT IS ORDERED AND ADJUDGED

that this action between Plaintiff Wag–Aero, Inc. and Defendants United States of America, Carol B. Hallett, Commissioner, United States Customs Service, Robert A. Becker, Special Agent, United States Customs Service. A. Mary Schiavo, Inspector General, United States Department of Transportation, Victor M. Gryniewicz, Special Agent, Office of the Inspector General, United States Department of Transportation, Thomas C. Richards, Administrator, Federal Aviation Administration, and Certain Unknown Federal Agents in Their Official Capacities is dismissed upon its merits.

Done and Ordered.

---

**20.** The parties have not addressed the issue of whether a private cause of action is available to Wag–Aero under the Paperwork Reduction Act.